**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 31 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RIGOBERTO VASQUEZ-
CASTILLO,

Defendant - Appellant.

No. 01-2023

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D. Ct. No.  CR-00-687-BB)**

---

Mario A. Esparza, Las Cruces, New Mexico, for Appellant.

David N. Williams, Assistant United States Attorney (Norman C. Bay, United
States Attorney, with him on the brief), Albuquerque, New Mexico, for Appellee.

---

Before **TACHA**, Chief Judge, **POLITZ**,[*] and **LUCERO**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

---

Mr. Vasquez-Castillo appeals the district court's order denying his motion

---

[*]Honorable Henry A. Politz, Senior Circuit Judge, United States Court of
Appeals for the Fifth Circuit, sitting by designation.

to suppress physical evidence.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I.  Background

The New Mexico Motor Transportation Division operates a permanent port of entry on Interstate 40 near San Jon, New Mexico, approximately fifteen miles from the Texas-New Mexico border.  New Mexico law requires all commercial carriers entering or leaving New Mexico to stop at all ports of entry.  N.M. Stat. Ann. § 65-5-1(A).  The state authorizes personnel assigned to the ports of entry to inspect commercial vehicles and their documentation to determine whether the vehicles, drivers, and cargo are in compliance with state laws regarding public safety, health, and welfare.  N.M. Stat. Ann. § 65-5-1.

The San Jon port of entry has a primary and secondary inspection area, known respectively as the "driveway" and "inspection bay."  Commercial carriers displaying a current CVSA inspection decal[1] are routinely subject to only a brief

_____

[1]A CVSA inspection decal signifies that a vehicle has passed an inspection using the criteria established by the Commercial Vehicle Safety Alliance, "a non-profit organization of federal, state, and provincial government agencies and representatives from private industry in the United States, Canada and Mexico dedicated to improving commercial vehicle safety."  http://www.cvsa.org/About_Us/about_us.html (last modified June 25, 2001).  Each decal is good for three months.  http://www.cvsa.org/Inspections/CVSA_Decals/cvsa_decals.html     (last modified June 25, 2001).

(continued...)

- 2 -

inspection at the driveway. But if the commercial carrier does not display a current CVSA inspection decal, port of entry personnel routinely direct it to an inspection bay for a more thorough inspection. Inspectors conduct three levels of inspections at the inspection bays. Of these, Level 1 is the most thorough.

At about 1:30 p.m. on May 2, 2000, Appellant Rigoberto Vasquez-Castillo drove a 1992 International cab-over truck hauling a trailer into the eastbound side of the San Jon port of entry. A passenger accompanied him. Officer Taylor, one of the agents on duty, noticed that Mr. Vasquez-Castillo's truck did not have a CVSA decal. He also noticed that Mr. Vasquez-Castillo's logbook was not current. He further observed some irregularities with Mr. Vasquez-Castillo's bill of lading. The amount of cargo, 10,000 pounds, seemed to him to be very small for a commercial carrier. The logbook also showed that the truck had made three previous stops, but Mr. Vasquez-Castillo presented only one bill of lading, rather than one for each stop as is customary. Because of the lack of a CVSA decal and the other irregularities, Officer Taylor directed Mr. Vasquez-Castillo to the inspection bay for a Level 1 safety inspection.

At the inspection bay, Inspector Pacheco conducted the inspection. After inspecting the outside of the truck and trailer, he inspected the undercarriage and

---

[1](...continued)
Inspectors at the New Mexico ports of entry, like their counterparts in 48 states, follow the CVSA guidelines.

brakes. When Inspector Pacheco had finished, Officer Taylor discussed with him the irregularities regarding Mr. Vasquez-Castillo's log book and bill of lading. They then decided to inspect the blocking and bracing and cargo.[2]

After Mr. Vasquez-Castillo opened the trailer, Inspector Pacheco entered the trailer. He observed three pallets with shrink-wrapped boxes lying unsecured, along with a stack of empty pallets near the front of the trailer. He considered this an unusually small amount of cargo for a truck of that size. As he proceeded forward in the trailer he detected the odor of raw marijuana. He also noticed a crack in the wall of the trailer, through which he could see a space between the inner wall and outer hull of the trailer. He further noticed that the front wall of the trailer had footprints on it with the toe facing down, was exceptionally clean, and had shiny new siderails while the rest of the trailer and truck was fairly old. Finally, he noticed an air vent in the trailer that appeared to lead to nowhere.

Inspector Pacheco asked Mr. Vasquez-Castillo to join him at the front of the trailer so he could explain whether the front of the trailer had been broken. Mr. Vasquez-Castillo stated that he had owned the trailer for only five months and that it was in the same condition as when he bought it. Inspector Pacheco then asked for Mr. Vasquez-Castillo's permission to search behind the wall. Mr.

---

[2]"Blocking and bracing" refers to the securing of cargo so that it does not move or shift during transit. See 49 C.F.R. § 393.104.

Vasquez-Castillo signed a consent to the search. He also loaned Inspector Pacheco his cordless drill to remove the braces from the wall.

Once he had opened the wall, Inspector Pacheco found wrapped bundles containing over 800 pounds of marijuana concealed in the compartment. Mr. Vasquez-Castillo was placed under arrest at that time. He then made a number of inculpatory statements, saying that it was all his fault and making other admissions.

Mr. Vasquez-Castillo moved to suppress the marijuana discovered in the trailer and his subsequent statements. The district court denied his motion. Mr. Vasquez-Castillo then entered into a conditional plea agreement, reserving the right to withdraw his guilty plea if the district court's order is reversed on appeal. He was sentenced to thirty months imprisonment to be followed by four years of supervised release. This appeal followed.

## II. Discussion

"In reviewing the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous. The evidence is viewed in the light most favorable to the district court's determination. The ultimate determination of reasonableness under the Fourth Amendment is a question of law which is reviewed de novo." United States v. West, 219 F.3d

1171, 1176 (10th Cir. 2000) (citations omitted).

Mr. Vasquez-Castillo argues that Inspector Pacheco's search of the trailer went beyond the permissible scope of safety inspection and was, therefore, a violation of the Fourth Amendment. We find this argument to be without merit.

## A. Closely Regulated Industry

We have previously held that commercial trucking is an industry closely regulated by both federal and state governments. United States v. Burch, 153 F.3d 1140, 1141-43 (10th Cir. 1998); V-1 Oil Co. v. Means, 94 F.3d 1420, 1426 (10th Cir. 1996); accord United States v. Fort, 248 F.3d 475, 480 (5th Cir. 2001); United States v. Dominguez-Prieto, 923 F.2d 464, 468 (6th Cir. 1991); New Mexico v. Jutte, 968 P.2d 334, 338 (N.M. Ct. App. 1998). Because it is a closely regulated industry, we apply the test articulated in New York v. Burger, 482 U.S. 691 (1987).

In Burger, the Supreme Court established a three-part test for determining whether a warrantless inspection of a closely regulated industry violates the Fourth Amendment:

> First, there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made. Second, the warrantless inspections must be necessary to further the regulatory scheme. . . . Finally, the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant.

- 6 -

Burger, 482 U.S. 691, 702-03 (citations and internal quotation marks omitted).

### 1. Substantial Government Interest

We find that the safety inspections of commercial carriers satisfy the first prong of the Burger test. "The state clearly has a substantial interest in regulating [commercial carriers] to protect public safety on the highways." Means, 94 F.3d at 1426; accord Fort, 248 F.3d at 480; Dominguez-Prieto, 923 F.2d at 468.

### 2. Necessary to Further the Regulatory Scheme

While we have not squarely answered the question of whether routine safety inspections are necessary to further the regulatory scheme governing commercial carriers, two of our sister circuits have. We agree with the Fifth and Sixth Circuits that the factors justifying the warrantless inspections of commercial carriers are "more compelling than those present in Burger" because commercial carriers, unlike the automobile junkyards considered in Burger, "pass quickly through states and out of the jurisdiction of the enforcement agencies." Dominguez-Prieto, 923 F.2d at 469; accord Fort, 248 F.3d at 481; see also Means, 94 F.3d at 1426 ("It could reasonably be concluded that random truck safety inspections are necessary to further that interest."). Thus, we find that the

safety inspections presently under consideration satisfy the second prong of the Burger test.

### 3.  Adequate Substitute for a Warrant

To satisfy this requirement, a regulation must sufficiently inform the commercial property owner that his property will be subject to periodic inspections undertaken for specific purposes, must notify owners as to who is authorized to conduct an inspection, and must limit the discretion of inspectors in time, place, and scope.  Burger, 482 U.S. at 701-03; accord Means, 94 F.3d at 1425.

We find that the regulatory scheme governing commercial carriers provides adequate notice to owners and operators of commercial carriers that their property will be subject to periodic inspections and adequately limits the discretion of inspectors in place and scope.  New Mexico law requires         all commercial motor vehicle carriers to "stop at every port of entry . . . for manifesting and clearance stickers."  N.M. Stat. Ann. § 65-5-1(A).  The operators of commercial motor vehicle carriers are required, upon request, to produce a manifest containing fourteen specific items of information relating to the vehicle and its owner, driver, and cargo.  N.M. Stat. Ann. § 65-5-1(B).  Inspectors at the port of entry are permitted to verify this information and to ascertain whether the

condition of the vehicle is safe for operation on the state's highways. N.M. Stat. Ann. § 65-5-1(C). To determine whether the vehicle is safe, those in charge of the port of entry are permitted to "inspect the vehicle *and its contents* to determine whether all laws and all rules and regulations of the departments of [New Mexico] with respect to public safety, health, welfare and comfort have been fully complied with." N.M. Stat. Ann. § 65-5-1(F) (emphasis added). New Mexico has also authorized its employees to enforce federal laws relating to commercial motor vehicle carriers. N.M. Stat. Ann. § 65-1-9.

Along with numerous other requirements, both federal and New Mexico regulations require proper blocking and bracing. See 49 C.F.R. § 393.104; N.M. Admin. Code § 18.2.3.13. "Proper blocking and bracing ensures that the cargo is secured 'so that, when the vehicle decelerates at a rate of 20 feet per second per second, the cargo will remain on the vehicle and will not penetrate the vehicle's front-end structure' and the cargo is protected against shifting sideways in transit." Burch, 153 F.3d at 1142 n.2 (quoting 49 C.F.R. § 393.104). We have previously noted that "[t]o check blocking and bracing, an officer must inspect the interior of a trailer." Id. Thus, we find in this case, as we found in Burch, that "Defendant could not help but be aware that his property was subject to periodic inspections undertaken for specific purposes, including inspection of the blocking and bracing." Id. at 1142 (internal quotation marks omitted).

Unlike the statute considered in <u>Burger</u>, no time limitation is placed on the regulatory scheme governing commercial carriers. We agree with the Sixth Circuit, however, that "[s]uch a limitation would, of course, render the entire inspection scheme unworkable and meaningless. Trucks operate twenty-four hours a day and the officers must, necessarily, have the authority to conduct these administrative inspections at any time." <u>Dominguez-Prieto</u>, 923 F.2d at 470. We therefore find that this regulatory scheme satisfies the third prong of the <u>Burger</u> test.

Having found that all three prongs of the <u>Burger</u> test are satisfied by the state and federal regulatory schemes governing commercial carriers, we find that Inspector Pacheco permissibly entered Mr. Vasquez-Castillo's trailer to inspect the blocking and bracing. He was, therefore, authorized by state and federal regulations to be in the trailer when he detected the odor of marijuana and observed the other aforementioned irregularities.[3] We now consider whether Inspector Pacheco had probable cause to search the secret compartment where the

---

[3]Inspector Pacheco stated that he also entered the trailer to inspect the cargo. Mr. Vasquez-Castillo argues that entering the trailer to inspect the cargo exceeded the permissible scope of the safety inspection. Because we find that Inspector Pacheco permissibly entered the trailer to inspect the blocking and bracing, we need not consider whether he also could have entered the trailer to inspect the cargo.

- 10 -

marijuana was hidden. [4]

## B. Probable Cause to Search the Secret Compartment

> Although the automobile exception to the Fourth Amendment's
> warrant requirement is based in part on the ready mobility of
> automobiles, "the justification to conduct such a warrantless search
> does not vanish once the car has been immobilized; nor does it
> depend upon a reviewing court's assessment of the likelihood in each
> particular case that the car would have been driven away, or that its
> contents would have been tampered with, during the period required
> for the police to obtain a warrant."

United States v. Anderson, 114 F.3d 1059, 1066 (10th Cir. 1997) (quoting

Michigan v. Thomas, 458 U.S. 259, 261 (1982) (per curiam)). "Probable cause

to search a vehicle is established if, under the totality of the circumstances, there

is a fair probability that the car contains contraband or evidence." United States

v. Downs, 151 F.3d 1301, 1303 (10th Cir. 1998) (internal quotation marks and

emphasis omitted). "The scope of a warrantless search of an automobile 'is

defined by the object of the search and the places in which there is probable

cause to believe that it may be found.'" United States v. Nielsen, 9 F.3d 1487,

1491 (10th Cir. 1993) (quoting United States v. Ross, 456 U.S. 798, 824 (1982)).

---

[4]We note that Mr. Vasquez-Castillo signed a written consent to search the secret compartment in his trailer. He argues, however, that his consent was not voluntary under the circumstances. Because we find that Inspector Pacheco had sufficient probable cause to search the vehicle without Mr. Vasquez-Castillo's consent, we need not address this issue.

"It is well established that although probable cause to search a car may not exist when a car is first stopped for a traffic citation, it can arise during the course of the stop." United States v. West, 219 F.3d 1171, 1178 (10th Cir. 2000) (citing Colorado v. Bannister, 449 U.S. 1 (1980)).

"An officer's detection of the smell of drugs . . . in a car is entitled to substantial weight in the probable cause analysis and can be an independently sufficient basis for probable cause." West, 219 F.3d at 1178; see also United States v. Ozbirn, 189 F.3d 1194, 1200 (10th Cir. 1999) (holding that odor of raw marijuana, combined with nervous behavior and vague description of travel plans, satisfied probable cause standard). When an officer encounters the smell of raw marijuana, there is the fair probability that the vehicle is being used to transport marijuana "and that the marijuana has been secreted in places other than the passenger compartment." Downs, 151 F.3d at 1303.

Inspector Pacheco detected the odor of raw marijuana. Viewing this under the totality of the circumstances – the unusually small amount of cargo, the irregularities in the log book and bill of lading, the space between the inner wall and outer hull of the trailer, the footprints on the front wall, the new appearance of the front wall and siderails compared with the rest of the trailer, and the vent which appeared to serve no purpose – we find that probable cause existed to search the secret compartment in the trailer.     See Dominguez-Prieto, 923 F.2d at

- 12 -

470 (holding that irregular log book entries and empty trailer contributed to probable cause to search for contraband). Consequently, we hold that this search did not violate Mr. Vasquez-Castillo's Fourth Amendment rights.

### III. Conclusion

We find that Inspector Pacheco's presence inside Mr. Vasquez-Castillo's trailer was within the permissible scope of a warrantless search of the closely regulated industry of commercial trucking. We further find that Inspector Pacheco's detection of the odor of raw marijuana under the totality of the circumstances provided probable cause to search the secret compartment of the trailer.

Accordingly, we AFFIRM the district court's order denying suppression of the physical evidence and Mr. Vasquez-Castillo's subsequent statements.