BRISCOE, Circuit Judge.
The United States appeals from the district court’s order granting defendant Joe Sparks’ motion to suppress evidence obtained during searches of his vehicle and residence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, reverse the district court’s suppression order, and remand for further proceedings.
I.
On the morning of June 2, 1999, dispatchers at the Sallisaw, Oklahoma, Police Department received a 911 call from a resident who reported seeing a plastic bag containing a white powdery substance on the side of a road just outside the city limits of Sallisaw. The caller had not touched the bag. Detective John Owens went to the reported location and found a large plastic bag containing “a large amount of a white powder ... wrapped in Saran Wrap.” Aplt.App. at 50. According to Owens, the bag was on the edge of the road beside a tinhorn and was in plain view as he approached. Owens took the bag to the Sequoyah County Sheriffs Office, where he performed a field test and concluded that it contained approximately one pound of methamphetamine. Based upon the field test results, the decision was made to prepare a decoy bag, filled primarily with rice flour instead of methamphetamine, that looked identical to the one retrieved by Owens. Owens placed the decoy bag in the location where he found the original bag, and set up surveillance “to see who, if anyone, would come back and pick it up.” Id. at 51-52.
Approximately two hours later, Owens observed a Dodge truck approach the area from the south, make a left turn heading west, and stop in the middle of the turn near the bag. The driver, defendant Sparks, got out of the truck, retrieved the decoy bag, and returned to his truck. Owens stopped Sparks as he began to drive away and arrested him. Sparks’ truck was impounded and inventoried by law enforcement officials. During the inventory search, officials found a loaded 9 millimeter handgun in plain view on the driver’s side floorboard, a roll of “Saran Wrap type wrapping” similar to the wrapping in the original bag, a green leafy substance, and a smoking pipe. Id. at 136.
Following Sparks’ arrest, Owens prepared an affidavit for a search warrant of Sparks’ residence. As probable cause for believing relevant evidence would be found there, Owens described the events leading to the arrest of Sparks. Owens further noted that, from the location where the bag was found and Sparks was arrested, Owens “could see ... Sparks’ residence, as indicated by his drivers license, as well as ... Sparks’ place of business.” Id. at 12. Owens alleged that, based upon his experiences with drug investigations, it was common for drug dealers to maintain in their residences paraphernalia and “records and ledgers evidencing their trafficking activities.” Id. at 13. Based upon Owens’ affidavit, a search warrant was issued for Sparks’ residence. Officers from the Se-quoyah County Sheriffs Office executed the warrant that same day (June 2, 1999) and seized a variety of evidence, including a plastic bag containing an off-white powder substance, stainless steel scales, plastic bags, a revolver and two shotguns, and papers containing “number figures.” Id. at 18.
On May 9, 2001, a federal grand jury indicted Sparks based upon his activities *686 on June 2, 1999. Specifically, the indictment charged Sparks with one count of possession with intent to distribute in excess of 400 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and one count of using and carrying a firearm (the 9 millimeter handgun found in his truck) during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). ApltApp. at 9-10. Sparks was arrested in connection with the federal indictment on May 16, 2001.
Immediately prior to his arrest, Sparks was driving north on a highway that ran through Sallisaw. Detective Owens and Clint Johnson, a member of a local drug task force, followed Sparks’ truck and turned on their overhead lights. Sparks parked his truck in the parking lot of a convenience store owned by his family, got out of his truck, and took two or three steps toward the rear of the truck. Johnson got out of his vehicle, approached Sparks, and informed Sparks he was under arrest. Johnson handcuffed Sparks and turned him over to Drug Enforcement Administration agents. After doing so, Johnson, in accordance with Sparks’ wishes, removed the keys from the truck and took them inside the convenience store.
Shortly after Sparks was handcuffed, Detective Owens looked into the open driver’s door of Sparks’ truck and observed some small (2 x 2-inch) plastic bags in the center of the truck’s front seat. Johnson, after returning from taking the keys inside the convenience store, also observed the bags. Based upon their observation of the small bags, Owens and Johnson proceeded to search the cab of the truck. They found a wooden marijuana pipe on the floorboard, and more small plastic bags in the ashtray. Owens also searched the bed of the truck and found, inside a brown bag in a bucket, two “eight balls” of methamphetamine packaged in small plastic bags. The brown bag also contained a small plastic bag with approximately four grams of marijuana. The three bags containing drugs were identical to the empty bags found inside the cab of the truck.
Shortly after Sparks’ arrest, Johnson prepared an affidavit for a search warrant of Sparks’ residence (the same residence that was searched by authorities on June 2, 1999). As probable cause for the search, Johnson outlined the details of Sparks’ arrest earlier that day and the evidence that was found in Sparks’ truck. Johnson further alleged he had been advised that Sparks, following his arrest, had “admitted to being in possession of approximately one pound of methamphetamine” on June 2, 1999. Aplt.App. at 21. Johnson also alleged he had been advised that, during an interview with a DEA agent on May 5, 2001, Sparks admitted he had in his residence a set of scales of the type “commonly used to weigh controlled dangerous substances.” Id. Johnson outlined the results of the search of Sparks’ residence on June 2, 1999, noting items of incriminating evidence that had been recovered by law enforcement officials. Based upon all of this information, as well as his training and experience, Johnson opined “that Sparks [wa]s actively involved in the distribution of controlled dangerous substances,” and likely was keeping paraphernalia and records of drug transactions at his residence. Id. A search warrant was issued and executed that same day (May 16, 2001). The items recovered from the residence included cash, numerous small bags, two sets of digital scales, plastic containers with a white powdery residue, a pair of night vision binoculars, and two firearms. Id. at 26.
Sparks moved to suppress items seized in (1) the June 2, 1999, search of his residence, (2) the May 16, 2001, search of his truck, and (3) the May 16, 2001, search of *687 his residence.[1] After conducting an evi-dentiary hearing, the district court granted Sparks’ motion in its entirety. The government has since filed a timely notice of appeal from the district court’s suppression order. See 18 U.S.C. § 3731 (allowing for a government appeal “from a decision or order of a district court suppressing or excluding evidence”).
II.
The government challenges the district court’s suppression order in its entirety. In reviewing the district court’s suppression order, we accept the district court’s factual findings unless clearly erroneous, review questions of law de novo, and view the evidence in the light most favorable to the prevailing party. See United States v. Holt, 264 F.3d 1215, 1228 (10th Cir.2001) (en banc).

June 1999 search of Sparks’ residence

The district court suppressed evidence found during the June 2, 1999, search of Sparks’ residence based on its conclusion that the underlying search warrant was not supported by probable cause. The district court also concluded that the “good faith exception [did] not save the search in question.” Aplt.App. at 232.
The Fourth Amendment states that “no Warrants shall issue, but upon probable cause, supported by Oath or affirmation.” U.S. Const, amend. IV. “In determining whether a search warrant is supported by probable cause, this court reviews the sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and ensuring ‘that the magistrate had a substantial basis for concluding that probable cause existed.’ ” United States v. Basham, 268 F.3d 1199, 1203 (10th Cir.2001) (quoting United States v. Tisdale, 248 F.3d 964, 970 (10th Cir.2001), cert. denied, — U.S. -, 122 S.Ct. 1120, 151 L.Ed.2d 1013 (2002)), cert. denied, — U.S. -, 122 S.Ct. 1336, 152 L.Ed.2d 241 (2002). “Probable cause to issue a search warrant exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place.” Id. at 1203.
In concluding that the search warrant for Sparks’ residence was not supported by probable cause, the district court focused on the affidavit submitted by Detective Owens in support of the warrant. The district court noted that Detective Owens’ own probable cause determination (i.e., that drug-related evidence would be found in Sparks’ residence) was based primarily on Sparks’ arrest earlier that day after picking up the decoy bag. The district court concluded, however, that Sparks’ arrest “was invalid.” Aplt.App. at 230. More specifically, the district court stated:
The package in question was in plain view. It was clearly sitting by the road for everyone to see. Defendant picking up a strange package outside of his subdivision without more is consistent with innocent activity. Anyone passing by could have picked up the package thinking it was trash or some other dangerous substance which they wanted removed from the neighborhood. There was nothing obvious about the picking up of the package that would lead officers to believe defendant knew it con *688 tained drugs. The officers had no other information about this defendant indicating he was involved in drug activities. There was no information from a confidential informant, a controlled buy or information from another surveillance. The only information these officers had was that defendant was the person that picked up the package in question. Further, Detective Owens testified he arrested the defendant immediately after getting into his car. Thus, the defendant had little opportunity to open the package to ascertain its contents. The court finds Detective Owens simply did not have enough facts to lead a reasonable person to believe that an offense had been committed by defendant. (Citation omitted.) Accordingly, there was insufficient probable cause to arrest the defendant at that point in time.
Id. at 231. The district court also concluded that even if Sparks’ arrest was valid, the affidavit for the search warrant was still “lacking in probable cause.” Id. at 232. According to the district court, Sparks’ behavior on the morning of June 2, 1999, “without more,” was “consistent with innocent activity.” Id. Further, the court noted, “Detective Owens was uncertain if defendant was living in the home outside of town at the time,” and “knew the home outside of town was under construction and that defendant owned a home in town as well.” Id.
Focusing first on the arrest of Sparks, we conclude the district court erred in characterizing the June 2, 1999, arrest as invalid. It is true that the district court found that the bag was on the side of a public road in plain view.[2] It is further true that at least one innocent passerby (i.e., the person who called 911) saw the bag and was curious about its contents. The question here, however, is “the degree of suspicion that ... attache[d]” to Sparks’ actions in retrieving the bag. Illinois v. Gates, 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 627 (1983); see id. (noting that “probable cause requires only a probability or substantial chance of criminal activity,” and that, “therefore, innocent behavior frequently will provide the basis for a showing of probable cause”). Although Sparks’ actions could theoretically have been innocent, we believe a prudent, cautious and trained police officer more likely would have construed those actions as indicating Sparks was familiar with and had some connection to the original bag containing methamphetamine. See generally Ornelas v. United States, 517 U.S. 690, 700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (indicating “that a police officer may draw inferences based on his own experience in deciding whether probable cause exists”); United States v. Santana-Garcia, 264 F.3d 1188, 1192 (10th Cir.2001) (“We measure probable cause against an objective standard and evaluate it in relation to the circumstances as they would *689 appear to a prudent, cautious and trained police officer.”); see also United States v. Arvizu, 534 U.S. 266, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002) (indicating that, in determining whether reasonable suspicion exists, police officers may “draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person”) (internal quotations omitted). Unlike the 911 caller, who closely observed the bag and its contents but did not touch it, Sparks acted as though he was familiar with the bag. In particular, the uncontroverted evidence indicates that Sparks stopped his truck, walked directly to the bag, picked it up (without making any attempt to examine it), and then returned immediately to his truck. The district court further found that after returning to his truck with the bag, Sparks started to leave. Aplt.App. at 226 (“The vehicle started to leave and was then stopped by the officers.”). Considered in their entirety, we conclude these circumstances would have led a reasonable person to believe that Sparks was engaged in, or otherwise connected to, the trafficking of methamphetamine (given the large quantity of methamphetamine found in the bag). Thus, we conclude that probable cause existed for Detective Owens to arrest Sparks. See United States v. Morris, 247 F.3d 1080, 1088 (10th Cir.2001) (“An officer has probable cause to arrest if, under the totality of the circumstances, he ‘learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested.’ ”) (quoting United States v. Vazquez-Pulido, 155 F.3d 1213, 1216 (10th Cir.1998)).
We also conclude the district court erred in holding that Detective Owens lacked a reasonable basis for believing that Sparks lived in the residence identified in the search warrant. According to the evidence, Sparks owned or maintained two residences, one inside the city limits of Sallisaw and one just outside the city limits (within eyesight of where the bag was found). Although Detective Owens did not have conclusive proof that Sparks was living in the residence outside the city limits, he testified that he drove by that residence on a regular basis and had seen Sparks there on numerous occasions. Further, although Owens was aware that construction of a portion of the residence had not been completed (i.e., the exterior brick work), Owens testified that “[f]rom the outside [h]e couldn’t tell that [Sparks] didn’t live there.” Aplt.App. at 178. Lastly, and perhaps most importantly, Owens’ affidavit noted that Sparks’ driver’s license listed that address (i.e., the house outside the city limits) as his place of residence. Id. at 12.
Because the arrest of Sparks was valid and Owens had a reasonable basis for believing that Sparks resided in the house located outside the city limits, we conclude that probable cause existed for the search warrant.[3] Given the large quantity of methamphetamine found in the bag, and given Sparks’ apparent connection with the bag (in light of his actions in retrieving the decoy package), it was reasonable for Owens to conclude that Sparks was involved in the distribution of methamphetamine. In turn, it was reasonable for Owens to believe there was a fair probability that additional evidence of crime (e.g., drug paraphernalia and/or sales records) would *690 be found in Sparks’ nearby residence. See United States v. Whitner, 219 F.3d 289, 297-99 (3d Cir.2000) (citing various cases and agreeing that evidence of involvement in the drug trade is likely to be found where drug dealers reside).

May 2001 search of Sparks’ truck

In suppressing the evidence seized from Sparks’ truck following his arrest on May 16, 2001, the district court concluded that the plain view doctrine was inapplicable because Sparks “was arrested at the rear end of the truck” and, therefore, “the officers did not see any evidence of drug activity in plain view at the time they arrested defendant.” Aplt.App. at 234. The court further concluded that the automobile exception did not apply because, in its view, the officers lacked probable cause to believe there was contraband in the truck. More specifically, the court concluded that the presence of the small plastic bags on the front seat of the truck was “insufficient probable cause to justify a search of the cab of the truck.” Id. at 235.[4]
As recognized by the district court, the search of Sparks’ truck potentially implicates two key exceptions to the Fourth Amendment’s warrant requirement. The first is the automobile exception. “The Supreme Court has held that ‘police officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant.’” United States v. Anderson, 114 F.3d 1059, 1065 (10th Cir.1997) (quoting Florida v. Meyers, 466 U.S. 380, 381, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984)). If this justification for searching a vehicle exists, it does not vanish simply because the vehi-ele has been immobilized. See United States v. Vasquez-Castillo, 258 F.3d 1207, 1212 (10th Cir.2001). Nor does it require a reviewing court to determine that the vehicle might have been driven away, or its contents tampered with, during the period required to obtain a search warrant. Id. The second exception is the “plain view doctrine.” This doctrine allows a police officer to properly seize evidence of a crime without a warrant if: “ ‘(1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object’s incriminating character was immediately apparent — i.e., the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself.’ ” United States v. Carey, 172 F.3d 1268, 1272 (10th Cir.1999) (quoting United States v. Soussi, 29 F.3d 565, 570 (10th Cir.1994)); see United States v. Hensley, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (concluding that, during the course of a lawful stop, police are entitled to seize evidence revealed in plain view in the course of the stop).
Reviewing courts have sometimes utilized both of these exceptions in combination in upholding warrantless vehicle searches. More specifically, if an officer has lawfully observed an object of incriminating character in plain view in a vehicle, that observation, either alone or in combination with additional facts, has been held sufficient to allow the officer to conduct a probable cause search of the vehicle. E.g. United States v. Reinholz, 245 F.3d 765, 776 (8th Cir.) (approving search of vehicle, which contained drug paraphernalia clearly visible through vehicle’s windows, that was parked in driveway of residence being *691 searched), cert. denied, — U.S. -, 122 S.Ct. 218, 151 L.Ed.2d 155 (2001); United States v. Fladten, 230 F.3d 1083, 1086 (8th Cir.2000) (concluding that observation of “[a]n item commonly used in the manufacture of methamphetamine ... in plain view in the back seat” of an automobile gave officers probable cause to search other parts of the automobile for further contraband or evidence); United States v. Garcia, 205 F.3d 1182, 1187 (9th Cir.) (concluding officer conducting traffic stop had probable cause to search tissue box after he observed a plastic bag sticking out from between the tissues, and because methamphetamine had already been found in the passenger’s possession), cert. denied, 531 U.S. 856, 121 S.Ct. 138, 148 L.Ed.2d 90 (2000); United States v. Hatten, 68 F.3d 257, 261 (8th Cir.1995) (concluding that officer’s plain view observation of the barrel of a gun sticking out from under the seat of a parked car, together with city ordinance prohibiting concealable weapons inside vehicles and state law prohibiting concealed weapons in vehicles, gave the officer probable cause to search the car); United States v. Leshuk, 65 F.3d 1105, 1107 n. 1 (4th Cir.1995) (concluding that presence of wire mesh and potting soil in plain view in bed of truck, combined with the arrest of truck’s owner who was in personal possession of marijuana plants, wire mesh, and planting materials, provided probable cause to conduct warrantless search of truck); United States v. Blackstone, 56 F.3d 1143, 1146 (9th Cir.1995) (concluding that “combination of the odor of marijuana on [defendant] and [a] marijuana pipe lying in plain view” in defendant’s truck provided probable cause for searching the truck). The government relies on the combination of the two exceptions in this case. According to the government, the officers “had probable cause to search the truck based on the plain-view sighting of the plastic baggies [on the front seat of the truck]” and their “knowledge of defendant’s drug dealing.” Gov’t Br. at 27 n. 13.
The initial question we must address is whether the small bags on the front seat of Sparks’ truck “came lawfully within” Detective Owens’ “plain view.” Arizona v. Hicks, 480 U.S. 321, 327, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). The district court concluded the bags did not lawfully come within Owens’ plain view because Sparks “was arrested at the rear end of the truck” and Owens did not observe the bags until after Sparks’ arrest. Aplt.App. at 234. Although the district court’s factual findings are supported by the record, its subsequent legal conclusion is erroneous. It was uncontroverted that Sparks got out of his truck and left the driver’s side door open. Thus, anyone walking by the truck, including Owens, could have looked into the truck and observed the 2 x 2-inch bags in the middle of the front seat. Stated differently, because Sparks left the driver’s side door of his truck open, he had “no legitimate expectation of privacy shielding that portion of the interior of’ his truck which could have been “viewed from outside the vehicle by either inquisitive passersby or diligent police officers.” Texas v. Brown, 460 U.S. 730, 740, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (citations omitted); see Horton v. California, 496 U.S. 128, 133, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (“If an article is already in plain view, ... its observation ... [does not] involve any invasion of privacy.”). The fact that Owens’ observation occurred after Sparks had been arrested does not affect the legality of the observation. Indeed, the driver’s side door of Sparks’ truck presumably would have remained open indefinitely if one of the arresting officers had not taken some action *692 to close it.[5] Moreover, the bags presumably would have been in plain view even if the driver’s side door of the truck had been closed (i.e., they could have been seen through one of the windows of the truck).
Having concluded that the bags were lawfully within Owens’ plain view, the next question is whether that observation, either alone or in combination with Owens’ knowledge of Sparks’ allegedly illegal activities, provided Owens with probable cause to search Sparks’ truck. Because Owens recognized the bags as being the “size and type used to distribute drugs,” Aplt.App. at 235, we believe it is reasonable to conclude that they were of an “incriminating character.” See Garcia, 205 F.3d at 1187 (concluding that plastic bag sticking out from between the tissues in a tissue box was of a sufficiently incriminating character, as least when combined with other factors, to provide probable cause for additional search). Combined with Owens’ knowledge of Sparks’ prior drug-related activities, and the fact that Owens was there to execute an arrest warrant for Sparks which was issued as a result of his indictment for trafficking in methamphetamine, the presence of the small bags on the front seat was sufficient in our view to provide Owens with probable cause to believe that the truck might contain additional evidence of criminal wrongdoing.

May 2001 search of Sparks’ residence

The district court suppressed evidence seized during the May 16, 2001, search of Sparks’ residence because, having found the search of Sparks’ truck earlier that day illegal, it concluded the affidavit submitted in support of the search warrant lacked sufficient information to provide probable cause for a search of the residence. Aplt.App. at 236. We agree with the government that the district court’s conclusion is erroneous.
For the reasons discussed above, the search of Sparks’ truck on May 16, 2001, was legal. Thus, contrary to the conclusion reached by the district court, information regarding the results of that search (i.e., that Sparks was in possession of methamphetamine and small plastic bags commonly used to distribute drugs) legitimately could have been considered in preparing the affidavit, and in turn by the state district court in issuing the search warrant for Sparks’ residence. In addition to that information, there was a significant amount of additional evidence that bolstered the affidavit and the probable cause determination. This included (1) Sparks’ post-arrest admission to having been in possession of approximately one pound of methamphetamine on June 2, 1999, (2) Sparks’ admission to DEA agents on May 5, 2001, that he had a set of scales in his residence, and (3) the results of the June 2, 1999, search of Sparks’ residence. Considered together, we believe this information would have led “a prudent person to believe there [wa]s a fair probability that contraband or evidence of a crime w[ould] be found in” Sparks’ residence. Basham, 268 F.3d at 1203.
III.
The district court’s order granting defendant Sparks’ motion to suppress evidence seized from his vehicle and residence is REVERSED and the case is REMANDED for further proceedings.

. Sparks also filed a motion to suppress statements he made to law enforcement officers following his arrest on May 16, 2001 (e.g., his admission that, on June 2, 1999, he placed the bag of methamphetamine by the side of the road). That motion was denied by the district court and is not at issue in this appeal.

. The government has challenged this factual finding on appeal. During the evidentiary hearing on Sparks’ motion to suppress his post-arrest statements, Detective Owens testified that the bag was in plain view as he walked toward it, and likewise would have been in plain view to a person who was driving by and looking toward it. Aplt.App. at 50-51. Defendant Sparks also testified that the decoy package was in plain view. Id. at 100. During the evidentiary hearing on Sparks' motion to suppress physical evidence seized during the search of his truck and the searches of his residence, Owens testified that the decoy package was beside a small bush or weed of some kind, and would have been difficult for Sparks to see from the direction from which he approached. Id. at 135 (“I don’t think he [Sparks] could have seen it.”). We are not persuaded that Owens' latter testimony was sufficient to render clearly erroneous the district court's factual finding regarding the visibility of the decoy package to a passing motorist.

. In light of this conclusion, we find it unnecessary to determine whether the good faith exception outlined in United States v. Leon, 468 U.S. 897, 104 S.Ct 3405, 82 L.Ed.2d 677 (1984), is applicable.

. The district court also concluded that the search in question was neither incident to arrest nor an inventory search. Aplt.App. at 234-35. The government has not challenged these conclusions on appeal.

. Following his arrest, Sparks asked one of the officers (Johnson) to retrieve the keys from his truck and take them into the convenience store.