**UNITED STATES of America,**

v.

**Donald George CORNELIUS and Anthony M. Swift, Defendants.**

**Case No. 12–CR–203–J.**

United States District Court, D. Wyoming.

Jan. 10, 2013.

Order Denying Reconsideration Jan. 24, 2013.

Eric J. Heimann, U.S. Attorney's Office, Cheyenne, WY, for Plaintiff.

Mark C. Hardee, Lee & Hardee Law Offices, Dion J. Custis, Cheyenne, WY, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO SUPPRESS EVIDENCE

ALAN B. JOHNSON, District Judge.

Wyoming Highway Patrol Trooper Aaron Kirlin stopped a commercial truck-trailer rig driven by Defendants Donald Cornelius and Anthony Swift to conduct a random commercial vehicle inspection as authorized by the Wyoming Commercial Vehicle Act. During the inspection, Trooper Kirlin discovered marijuana in Defendants' trailer and the United States charged Defendants with violating federal drug laws. Defendants have now filed a motion asking this Court to suppress any and all evidence stemming from Trooper Kirlin's stop and search, arguing that Trooper Kirlin violated their Fourth Amendment rights. The Court denies Defendants' motion.

### FACTS

One summer morning in 2012, Wyoming Highway Patrol Trooper Aaron Kirlin stopped a commercial truck-trailer rig driven by Defendants Donald Cornelius and Anthony Swift as it traveled eastbound on Interstate 80 near Arlington, Wyoming. *See* Suppression Hr'g Tr. 14:16–15:13, ECF No. 39. The stop was not justified by probable cause or reasonable suspicion. *See* Government's Resp. 3, ECF No. 28. Rather, Trooper Kirlin

stopped Defendants to perform a random commercial vehicle inspection as authorized by the Wyoming Commercial Vehicle Act and the rules and regulations promulgated under it (the Act). *See* Wyo. Stat. Ann. §§ 31–18–101 through 31–18–903 (2011).

The Act authorizes state highway patrol troopers to randomly stop and inspect commercial vehicles. *See* Wyo. Stat. Ann. § 31–18–301(c) (2011). It also requires commercial vehicle drivers to submit their bills of lading to state highway patrol troopers so that the troopers can inspect the vehicle's load and compare it against the bill of lading. *See* Wyo. Stat. Ann. § 31–18–701(c)(2011).

After stopping Defendants, Trooper Kirlin approached the truck and asked Mr. Cornelius for his driver's license, registration, logbook, bill of lading, and medical card. Suppression Hr'g Tr. at 16:3–17:2, ECF No. 39. Trooper Kirlin noticed that Mr. Cornelius's hand was shaking when he handed Trooper Kirlin his driver's license. *Id.* at 16:13–15. Trooper Kirlin testified that this nervousness was unusual because truck drivers frequently encounter law enforcement during inspections at ports of entry and during random inspection stops. *See id.* at 16:16–22.

Trooper Kirlin and Mr. Cornelius walked back to Trooper Kirlin's patrol car to review Mr. Cornelius's documents. *See id.* at 18:1–8. While in the patrol car, Trooper Kirlin noted other signs of nervousness, including Mr. Cornelius's heavy breathing. *See id.* at 19:17–20, 26:1–6. When Trooper Kirlin asked Mr. Cornelius if he was nervous, Mr. Cornelius admitted that he was. *Id.* at 19:23–20:3. Mr. Cornelius displayed this nervousness despite Trooper Kirlin's assurances that Mr. Cornelius had done nothing wrong up to that point. *Id.* at 20:11–18. Trooper Kirlin also noticed irregularities while reviewing Mr. Cornelius's documents. He consid-

ered Mr. Cornelius's work schedule unusual given the excessive amount of downtime reflected in the logbook. *See id.* at 23:4–19. And Trooper Kirlin received a red flag warning when he ran the Department of Transportation (DOT) number for Defendants' company through his computer system. *Id.* at 25:5–25.

After reviewing Mr. Cornelius's documents, Trooper Kirlin asked Mr. Cornelius to get the key to the trailer so that Trooper Kirlin could inspect the trailer's cargo. *See id.* at 26:20–27:5. When Mr. Cornelius opened the trailer, Trooper Kirlin noticed more irregularities. He saw several unsecured U–Haul type boxes and a suitcase in the trailer. *Id.* at 28:1–10. Trooper Kirlin found this unusual because, according to his testimony, "there's no legitimate reason for luggage to be within the cargo area of a trailer." *Id.* at 28:14–15. Trooper Kirlin also noticed discrepancies between the bill of lading and the trailer's contents; the bill of lading did not list any personal luggage or U–Haul type boxes. *See id.* at 28:16–22. When Trooper Kirlin climbed up into the trailer, he smelled a faint odor of raw marijuana. *Id.* at 29:14–21.

Trooper Kirlin then got out of the trailer and went back to his patrol car without touching, moving, or searching any of the trailer's contents. *Id.* at 29:22–30:22. He contemplated stopping the inspection, but instead he decided to proceed and informed Mr. Cornelius that he believed something illegal was in the trailer. *See id.* at 30:23–32:4. Trooper Kirlin then Mirandized Mr. Cornelius even though Trooper Kirlin assured Mr. Cornelius that he was not under arrest and that this was not an interrogation, and then Trooper Kirlin asked Mr. Cornelius for permission to search the trailer. *See id.* at 32:1–20. Mr. Cornelius told Trooper Kirlin that he would have to ask Mr. Swift for permission to search the trailer. *Id.* at 32:19–24. Be-

fore going to talk to Mr. Swift, Trooper Kirlin asked Mr. Cornelius where he was when the trailer was loaded, and Mr. Cornelius responded that he was at a hotel when the trailer was loaded. *See id.* at 32:25–33:5. Trooper Kirlin found this unusual because it costs money to stay at a hotel, and he testified that it makes no sense to spend money on a hotel when a driver can stay in the driver's truck for free. *See id.* at 32:25–33:13.

Trooper Kirlin then went to talk to Mr. Swift. *See id.* at 33:17–21. Trooper Kirlin informed Mr. Swift that he suspected something illegal was in the trailer, told Mr. Swift that he was not under arrest, and then Mirandized Mr. Swift before asking him for permission to search the trailer. *See id.* at 36:8–24. Mr. Swift consented to the search. *Id.* at 36:25–37:1. Trooper Kirlin then informed Mr. Swift that he could say no to the search, to which Mr. Swift replied, "Why would I tell you no?" *Id.* at 37:2–7. Trooper Kirlin never told Mr. Swift that he could conduct the search regardless of Mr. Swift's permission. *See generally id.* Trooper Kirlin was the only officer at the scene. *See id.* at 37:8–12. He never brandished his weapon. *Id.* at 37:13–20. He neither used physical force nor threatened Mr. Swift with physical force. *See id.* at 37:21–25. Trooper Kirlin spoke in a calm tone of voice during his encounter with Defendants. *See id.* at 38:1–8. The encounter took place during the day, *see id.* at 14:16–15:13, and Mr. Swift appeared to be in a sound mental and emotional state when he gave consent, *see id.* at 38:9–14. Mr. Swift aided the search by obtaining the trailer key from Mr. Cornelius and opening the trailer for Trooper Kirlin. *See id.* at 38:15–25. When Trooper Kirlin asked Mr. Swift if he could search some of the boxes in the trailer, Mr. Swift responded, "Sure, you can check anything you want in this truck." Government Ex. 1 at 8:45:53–8:46:01.

The first box that Trooper Kirlin opened contained packages of marijuana. Suppression Hr'g Tr. 40:1–5, ECF No, 39. Trooper Kirlin then arrested Defendants. *Id.* at 42:8–17. Police eventually discovered over 200 pounds of marijuana in Defendants' trailer. *See id.* at 43:11–14. Police also seized various items from the truck's cab and from Mr. Cornelius's person. *See id.* at 44:2–45:6.

The United States has charged Defendants with possession with intent to distribute marijuana and drug conspiracy. Government's Resp. 1, ECF No, 28. Mr. Cornelius has now filed a motion asking this Court to suppress any and all evidence stemming from Trooper Kirlin's stop and search of Defendants' rig, *see* Cornelius Mot. 1, ECF No. 27, and Mr. Swift has joined Mr. Cornelius's motion, *see* Order 1, ECF No. 31. Defendants argue that Trooper Kirlin's initial stop and entry of Defendants' trailer violated the Fourth Amendment, as did Trooper Kirlin's subsequent search of the trailer because Trooper Kirlin had neither probable cause nor valid consent. *See* Cornelius Supplemental Br. 1, ECF No, 43. The government responds that the initial stop and entry were lawful under Supreme Court and Tenth Circuit decisions authorizing warrantless stops and searches of closely regulated businesses. *See* Government's Resp. 8–12, ECF No. 28. The Government further contends that Trooper Kirlin's subsequent search was justified by probable cause and by Mr. Swift's consent. *See id.* at 12.

## DISCUSSION

The Court first will discuss whether Trooper Kirlin's initial stop and entry of Defendants' trailer violated the Fourth Amendment. Next, the Court will discuss whether probable cause arose during the course of the stop such that Trooper Kir-

lin's subsequent search of the trailer was justified. Third, the Court will discuss whether Trooper Kirlin's search was justified by Mr. Swift's voluntary consent. A brief conclusion follows.

## I. Trooper Kirlin's Initial Stop and Entry of Defendants' Trailer

The first issue here is whether Trooper Kirlin's initial stop and entry of Defendants' trailer violated the Fourth Amendment. The Court concludes that the initial stop and entry did not violate the Fourth Amendment under that line of Supreme Court and Tenth Circuit decisions authorizing warrantless seizures and searches of closely regulated industries.

■■■ Under the Fourth Amendment to the United States Constitution, warrantless seizures and searches of persons engaged in "closely regulated" industries are permissible so long as three criteria are met. *See New York v. Burger,* 482 U.S. 691, 702–03, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987); *United States v. Seslar,* 996 F.2d 1058, 1061 (10th Cir.1993). First, a substantial government interest must inform the statutory scheme pursuant to which the inspection is made. *Seslar,* 996 F.2d at 1061. Second, the warrantless inspection must be necessary to further the statutory scheme. *Id.* Third, the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant. *Id.* To satisfy this third criterion, the statute must perform two functions: (1) The statute must advise the person or entity doing business in a closely regulated industry that the search is being done pursuant to the law and has a properly defined scope, and (2) the statute must limit the discretion of the inspecting officers. *Id.*

■■ Before applying *Burger's* three-part test, however, a court first must determine whether the industry involved is in fact "closely regulated," and whether the defendants were engaged in that industry. *See id.* at 1061–62. "This initial determination is important because the justification for permitting warrantless searches is that persons doing business in closely regulated industries have a significantly reduced expectation of privacy." *Id.; see also United States v. Herrera,* 444 F.3d 1238, 1245 (10th Cir.2006). The Tenth Circuit has held that commercial trucking is a closely regulated industry. *United States v. Vasquez–Castillo,* 258 F.3d 1207, 1210 (10th Cir.2001); *V–1 Oil Co. v. Means,* 94 F.3d 1420, 1426 (citing Wyo Stat. Ann. §§ 31–18–101 through 31–18–902) ("Motor carriers are closely regulated by both state and federal governments."). And Defendants have conceded that they were engaged in commercial trucking. *See* Suppression Hr'g Tr. 110:15–18 ("I certainly don't have any questions ... that this was a commercial carrier as well. We will concede that as well."). Thus, Defendants were engaged in a closely regulated industry such that consideration of *Burger's* three-part test is appropriate to determine the legality of Trooper Kirlin's initial stop and entry.

The Wyoming Commercial Vehicle Act satisfies the first two criteria of *Burger's* three-part test. *Burger's* first criterion requires that a substantial government interest inform the regulatory scheme pursuant to which the inspection is made. *Seslar,* 996 F.2d at 1061. The Tenth Circuit has held that "safety inspections of commercial carriers satisfy the first prong of the *Burger* test. The state clearly has a substantial interest in regulating [commercial carriers] to protect public safety on the highways." *Vasquez–Castillo,* 258 F.3d at 1211 (alteration in original) (internal quotation marks omitted). The Tenth Circuit also has held that safety inspections of commercial carriers satisfy *Burger's* second criterion, stating that safety

inspections are necessary to further the regulatory scheme governing commercial carriers given that commercial carriers pass quickly through states and out of the jurisdiction of enforcement agencies. *See id.* Thus, Tenth Circuit precedent already has established that the Act satisfies *Burger's* first two criteria.

Regarding *Burger's* third criterion—requiring that the statute provide a constitutionally adequate substitute for a warrant—the Tenth Circuit has provided the following guidance. To satisfy this criterion the statute must "sufficiently inform the commercial property owner that his property will be subject to periodic inspections undertaken for specific purposes, must notify owners as to who is authorized to conduct an inspection, and must limit the discretion of inspectors in time, place, and scope." *Id.*

The Court concludes that the Act satisfies *Burger's* third criterion because it provides adequate notice to owners and operators of commercial vehicles that their property will be subject to periodic inspections and adequately limits the discretion of inspectors in place and scope. The Act puts owners and operators of commercial vehicles on notice that they can be stopped and searched: "Investigators, [members of the state highway patrol], and authorized personnel may compel the driver to *stop and submit the vehicle to an inspection* ...." Wyo. Stat. Ann. § 31–18–301(c) (2011) (emphasis added). The Act also puts owners and operators on notice that their cargo can be searched: "The enforcement officers may require the driver ... to submit to the enforcement officer for inspection any and all bills of lading," and

*"the officer may inspect the contents of the vehicle* for the purpose of comparing same with bills of lading...." Wyo. Stat. Ann. § 31–18–701(c) (2011) (emphasis added); *see also V–1 Oil Co. v. Means,* 94 F.3d 1420, 1423 (10th Cir.1996) (stating that § 31–18–701(c) authorizes officers to inspect a truck's contents to determine if the contents match the bill of lading).

The Act also notifies owners and operators as to who is authorized to conduct inspections. *See* Wyo. Stat. Ann. § 31–18–301(c) (2011) (authorizing field investigators of the Wyoming Department of Transportation, members of the state highway patrol, and other authorized personnel of the Wyoming Department of Transportation to conduct inspections). The Act also limits the discretion of inspectors in place and scope.[1] Regulations limit the discretion of inspectors in place by stating that "[t]he Wyoming Commercial Vehicle Act does not apply when transportation by motor vehicle is entirely on nonstate highways." 45–40–001 Wyo. Code R. § 3(c) (LexisNexis 2012). The Act also limits the discretion of inspectors in scope by permitting random inspections only of commercial vehicles and motor carriers. *See* Wyo. Stat. Ann, § 31–18–101(a)(iii) and (a)(x) (2011).

The Act thus satisfies all three criteria of the *Burger* test, and therefore the Court holds that a stop and entry conducted under the Act falls within the exception to the warrant requirement for inspections of closely regulated businesses. In light of this holding, the Court concludes that Trooper Kirlin lawfully stopped Defendants and lawfully entered Defendants' trailer to compare the bill of lading against

---

**1.** While the Act does not place any time limitation on when enforcement officers can conduct inspections, the Tenth Circuit has stated that "[s]uch limitation would, of course, render the entire inspection scheme unworkable and meaningless. Trucks operate twenty-four hours a day and the officers must, necessarily, have the authority to conduct these administrative inspections at any time." *United States v. Vasquez–Castillo,* 258 F.3d 1207, 1212 (10th Cir.2001) (alteration in original).

the cargo. *Cf. United States v. Gwathney,* 465 F.3d 1133, 1140 (10th Cir.2006) (holding that New Mexico law authorizes officers to enter a commercial vehicle's trailer to inspect the trailer's cargo pursuant to officers' regulatory duty to inspect the contents of the trailer); *Vasquez–Castillo,* 258 F.3d at 1212. Trooper Kirlin was, therefore, lawfully inside Defendants' trailer when he smelled the odor of marijuana and saw other irregularities in the trailer.

## II. Probable Cause to Search the Trailer

Having concluded that Trooper Kirlin's initial stop and entry of Defendants' trailer did not violate the Fourth Amendment, the next issue is whether Trooper Kirlin violated the Fourth Amendment by subsequently searching the trailer's contents. The Court concludes that Trooper Kirlin's search did not violate the Fourth Amendment because he had probable cause to believe that the trailer contained contraband.[2]

■ Under the Fourth Amendment, if police have probable cause to believe that a vehicle contains evidence of a crime, then the police can search the vehicle without a warrant. *See Maryland v. Dyson,* 527 U.S. 465, 466–67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (discussing the "automobile exception" to the warrant requirement); *United States v. Mercado,* 307 F.3d 1226, 1228 (10th Cir.2002) (same). Although probable cause to search a vehicle might not exist when the vehicle is first stopped, it can arise during the course of the stop. *United States v. Vasquez–Castillo,* 258 F.3d 1207, 1213 (10th Cir.2001). Police have probable cause to search a vehicle "if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." *Id.*

at 1212. The Tenth Circuit has stated that "an officer's detection of the smell of drugs ... in a car is entitled to substantial weight in the probable cause analysis and can be an independently sufficient basis for probable cause." *Id.* at 1213 (alteration in original) (citing *United States v. Ozbirn,* 189 F.3d 1194, 1200 (10th Cir.1999) (holding that odor of raw marijuana, combined with nervous behavior and vague description of travel plans, satisfied probable cause standard)).

■ Here, Trooper Kirlin detected the odor of raw marijuana when he initially entered the trailer. *See* Suppression Hr'g Tr. 29:1421, ECF No. 39. Viewing this under the totality of the circumstances— Mr. Cornelius's shaking hands, heavy breathing, and general nervousness despite Trooper Kirlin's assurances that he had done nothing wrong, the irregularities in Defendants' logbook, the red flag warning when Trooper Kirlin ran the DOT number on Defendants' company, the unsecured luggage in the trailer, the discrepancies between the bill of lading and the trailer's contents, and Mr. Cornelius's statement that he was at a hotel, not with the truck, when the trailer was loaded— the Court concludes that Trooper Kirlin had probable cause to search the trailer. Because a warrant is not required to search a vehicle when probable cause exists, Trooper Kirlin did not violate the Fourth Amendment by searching the trailer and the Court denies Defendants' motion to suppress on that ground.

## III. Consent to Search the Trailer

Even if Trooper Kirlin lacked probable cause, Mr. Swift voluntarily consented to the search such that it was justified on that ground as well. "[O]ne of the specifi-

---

**2.** The Court need not and does not address whether Wyoming's regulatory scheme would have authorized Trooper Kirlin to actually

open the boxes he found in the trailer because the Court concludes that Trooper Kirlin had probable cause to search the trailer.

cally established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The Supreme Court has held that, when the government attempts to justify a search on the basis of consent, the government must demonstrate that consent was voluntarily given and not the result of duress or coercion. *See id.* at 248, 93 S.Ct. 2041. "Voluntariness is a question of fact to be determined from all the circumstances, and ... the subject's knowledge of a right to refuse consent is a factor to be taken into account...." *Id.* at 248–49, 93 S.Ct. 2041.

Many other factors bear on whether a defendant voluntarily consented to a search, including: whether the police officer made an express or implied false claim that he could immediately proceed with the search in any event, *see Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); the number of police officers present, *see Harless v. Turner,* 456 F.2d 1337, 1338–39 (10th Cir. 1972); whether the police officer brandished a weapon, *see United States v. Bass,* 661 F.3d 1299, 1304 (10th Cir.2011); whether the police officer used physical force or threatened physical force, *see Hemphill v. Hale,* 677 F.3d 799, 801 (8th Cir.2012); whether the defendant was in custody when the defendant gave consent, *see United States v. Contreras,* 506 F.3d 1031, 1037 (10th Cir.2007); the police officer's tone of voice, *see id.;* (7) the time of day, *see id.;* the defendant's mental or emotional state at the time consent was given, 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 8.2(e) (5th ed. 2011); and whether the defendant aided in the search, *see id.* § 8.2(g). This list of factors is illustrative, not exhaustive. Ultimately, "whether consent was voluntary is a question of fact based on the totality of the circumstances." *Bass,* 661 F.3d at 1304.

■ Here, the Court concludes that Mr. Swift voluntarily consented to Trooper Kirlin's search based on the totality of the circumstances. Mr. Swift consented to the search even after Trooper Kirlin informed Mr. Swift that he could refuse consent. *See* Suppression Hr'g Tr. 36:22–37:7, ECF No. 39. Trooper Kirlin never told Mr. Swift that he could conduct the search regardless of whether Mr. Swift gave permission, *See generally id.* Trooper Kirlin was the only officer at the scene. *See id.* at 37:8–12. He never brandished his weapon. *Id.* at 37:13–20. He neither used physical force nor threatened Mr. Swift with physical force. *See id.* at 37:21–25. Trooper Kirlin spoke in a calm tone of voice during his encounter with Defendants. *See id.* at 38:1–8. The encounter took place during the day, *see id.* at 14:16–15:13, and Mr. Swift appeared to be in a sound mental and emotional state when he gave consent, *see id.* at 38:9–14. Mr. Swift aided the search by getting the trailer key from Mr. Cornelius and opening the trailer for Trooper Kirlin. *See id.* at 38:15–25. When Trooper Kirlin asked Mr. Swift if he could search some of the boxes in the trailer, Mr. Swift responded, "Sure, you can check anything you want in this truck." Government Ex. 1 at 8:45:53–8:46:01. Based on these facts, the Court concludes that Mr. Swift voluntarily consented to Trooper Kirlin's search of the trailer such that Trooper Kirlin's search was justified on that ground as well.

## CONCLUSION

The Court denies Defendants' motion to suppress because Trooper Kirlin never violated Defendants' Fourth Amendment rights. Trooper Kirlin's initial stop and entry of Defendants' trailer did not violate the Fourth Amendment because a stop

and entry conducted under the Wyoming Commercial Vehicle Act falls within the exception to the warrant requirement for inspections of closely regulated businesses. Trooper Kirlin's subsequent search of the trailer did not violate the Fourth Amendment because Trooper Kirlin had probable cause to believe that the trailer contained contraband. And even absent probable cause, Trooper Kirlin's search did not violate the Fourth Amendment because Mr. Swift voluntarily consented to it. The Court therefore **DENIES** Defendants' motion to suppress (ECF No. 27).

## ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION

Defendant Donald Cornelius has filed a motion asking this Court to reconsider its order denying Mr. Cornelius's motion to suppress evidence. The Court is under no obligation to afford Mr. Cornelius the relief he requests, *see United States v. Wiseman,* 172 F.3d 1196, 1207–08 (10th Cir. 1999), and Mr. Cornelius points to no extraordinary circumstances that could justify granting his motion. The motion merely rehashes arguments already made and raises arguments that could have been made in the suppression motion. The Court therefore **DENIES** Mr. Cornelius's motion for reconsideration (ECF No. 47).