**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 6 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

vs.

EDMUND XAVIER CANTU,

      Defendant - Appellant.

No. 04-3291

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 04-CR-10011-JTM)**

Brent I. Anderson, Assistant United States Attorney, (and Eric F. Melgren, United States Attorney, on the brief), Wichita, Kansas, for Plaintiff - Appellee.

Gary W. Owens, Law Office of Falk & Owens, P.A., Wichita, Kansas, for Defendant - Appellant.

Before **SEYMOUR**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge and **KELLY**, Circuit Judge.

**KELLY**, Circuit Judge.

      Defendant-Appellant Edmund Xavier Cantu appeals the district court's

denial of a motion to suppress evidence and his subsequent conviction of

possession of 100 kilograms or more of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a) and (b)(1)(B). The district court held that the arresting officers had probable cause to detain Mr. Cantu and that subsequent warrants for the search of his car and a residence were valid. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## Background

The facts in this case appear to be undisputed. On April 14, 2003, officers of the Hutchinson (Kansas) Police Department arrested Mr. Cantu after a search of his vehicle revealed a large quantity of marijuana in the trunk. The officers subsequently discovered additional quantities of marijuana after searching a nearby residence in Hutchinson. Both searches were conducted under warrants issued by a state judge.

At the time of his arrest, Mr. Cantu was a suspect in an ongoing drug investigation. He had several previous arrests, including an arrest for possession with intent to distribute several bricks of marijuana occurring at a storage facility on August 6, 2002. One week prior to his arrest, officers acted on a tip that Mr. Cantu received supplies for his drug operation in El Paso, Texas by following him as far south as Stratford, Texas. Subsequently, officers continued an intermittent surveillance.

On April 14, 2003, Officer Jamie Ty Schoenhoff observed Mr. Cantu operating the same vehicle he had driven to Texas. Around 10:00 p.m., officers followed Mr. Cantu to a storage facility. Officer Schoenhoff testified at the suppression hearing that he did not see Mr. Cantu access a storage shed. Instead, Mr. Cantu exited the vehicle and disappeared into a line of evergreen trees or bushes. Mr. Cantu's wife, Melina Pina, formerly a passenger in the vehicle, then drove the vehicle away from the storage facility. After following the vehicle for a short distance, Officer Schoenhoff returned to the storage facility. There he began surveillance and was soon joined by Detective Howard Shipley. Shortly thereafter, Ms. Pina returned in the vehicle. Officer Schoenhoff next observed Mr. Cantu emerge from the line of evergreens dragging a large black duffel bag on the ground. While neither officer observed Mr. Cantu placing the bag in the vehicle's trunk, Detective Shipley observed the trunk opening and closing. Mr. Cantu then entered the driver's side of the car and proceeded to exit the storage facility.

A short distance from the facility, the police officers stopped Mr. Cantu's vehicle. They informed him that they suspected he had placed illegal narcotics in the trunk of the vehicle and requested permission to search. Permission being denied, the officers informed Mr. Cantu that they would be obtaining a search warrant and detained him and his passengers. The officers made no arrest at the

time, but informed the vehicle occupants that they were not free to leave. Approximately two-and-one-half hours later, Officer Schoenhoff obtained and executed a warrant, discovering numerous packages of marijuana.

While Officer Schoenhoff obtained a warrant to search the vehicle, Detective Shipley retraced Mr. Cantu's route through the evergreens and observed drag marks coming from the back of a residence and leading through the trees or bushes to the storage facility. The officers subsequently obtained an additional warrant to search the residence and discovered large black duffel bags, similar to one found in the trunk of Mr. Cantu's car, containing marijuana.

At the suppression hearing, Mr. Cantu argued that the officers lacked reasonable suspicion to justify an investigative stop of Mr. Cantu's vehicle and that the delay in obtaining and executing a search warrant exceeded the acceptable parameters of an investigative stop. Mr. Cantu further argued that the warrants were invalid for lack of probable cause. Rejecting Mr. Cantu's investigative stop argument, the district court found that the officers had probable cause to detain Mr. Cantu and that the warrants were properly issued on a showing of probable cause. Mr. Cantu then pleaded guilty to possession of 100 kilograms or more of marijuana with intent to distribute, reserving his right to appeal the denial of the motion to suppress evidence.

Discussion

Mr. Cantu argues that the warrant for the search of his vehicle was not based on probable cause and that his detention was illegal. On appeal from the denial of a motion to suppress evidence, we review the district court's factual findings for clear error, viewing the evidence in the light most favorable to the government. United States v. Jardine, 364 F.3d 1200, 1204 (10th Cir. 2004), vacated on other grounds ___ U.S. ___, 125 S. Ct. 1024 (2005). The district court's determination of reasonableness under the Fourth Amendment is reviewed de novo. Id.

A.  The Search Warrants

Because we find the issue determinative, we begin by examining whether the search warrant for Mr. Cantu's vehicle was supported by probable cause. In the context of searches, we have previously noted that probable cause exists where attending circumstances "would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Basham, 268 F.3d 1199, 1203 (10th Cir. 2001).

In determining whether a warrant is supported by probable cause, we assess the sufficiency of a supporting affidavit based on the totality of the circumstances. United States v. Harris, 369 F.3d 1157, 1165 (10th Cir. 2004).

The magistrate's determination of probable cause is entitled to great deference. Spinelli v. United States, 393 U.S. 410, 419 (1969). Our review is limited to ensuring that the magistrate's determination had a substantial basis. United States v. Tisdale, 248 F.3d 964, 970 (10th Cir. 2001).

In the instant case, Officer Schoenhoff proffered five discreet episodes in his affidavit to justify a warrant to search Mr. Cantu's vehicle. First, Officer Schoenhoff described Mr. Cantu's arrest on April 22, 2002, after officers discovered a two-pound brick of marijuana in the car he was driving. Next, the affidavit recounted Mr. Cantu's arrest on August 6, 2002. This arrest occurred at night, at a storage facility, and after Mr. Cantu raised the suspicions of the facility manager. Officers again discovered marijuana in Mr. Cantu's car. Third, Officer Schoenhoff noted Mr. Cantu's August 17, 2001, conviction for possession of cocaine and the fact that he was currently on parole. Fourth, the officer noted that subsequent to the August 2002 arrest, he received information from a confidential informant that Mr. Cantu resupplied his drug operation in Texas. As recounted above, police officers acted on this information in following Mr. Cantu to Texas, observing him in the vehicle implicated in this case. Finally, Officer Schoenhoff recounted the events of April 14, 2003, including Mr. Cantu's activities at the storage facility.

In assessing whether the warrant was based on probable cause, we do not

view each supporting fact or episode in isolation. While one fact alone may not support a finding of probable cause, a cumulative assessment may indeed lead to that conclusion. In this case, we hold that the search warrant for Mr. Cantu's vehicle issued on a showing of probable cause. Mr. Cantu's prior narcotics-related arrests, while certainly not determinative, tended to establish his participation in drug-related conduct over a period of time. See Jardine, 364 F.3d at 1205-06. Moreover, the August 6, 2002, arrest arose from circumstances similar to those occurring on the night of April 14. The confidential informant's tip, although deserving of little weight given the lack of identification and only minimal corroboration, see Illinois v. Gates, 462 U.S. 213, 243-44 (1983), did lead to the police officers' observation of Mr. Cantu in the vehicle involved in this case and commencement of an ongoing investigation. Finally, the circumstances occurring on the night of April 14 were highly suspicious, and, most importantly, harkened back to Mr. Cantu's previous arrest. Under these circumstances, we believe the state judge had an ample basis on which to determine the existence of probable cause.

Mr. Cantu challenges the validity of the warrant by arguing that certain information contained in the affidavit was stale, and thus could not properly support a finding of probable cause. Specifically, he argues that his prior arrests, the most recent occurring eight months prior to the April 14 incident, were too

remote and failed to establish an ongoing criminal exercise.  We disagree.

A search warrant may not issue if based upon information that has grown stale, i.e., information that no longer supports an affidavit's underlying assertion that the item sought will be found in the area or location to be searched.  United States v. Snow, 919 F.2d 1458, 1459 (10th Cir. 1990).  However, timeliness and relevance cannot be judged solely by the days of the calendar.  Id. at 1460. Rather, "whether the information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized."  Id. (citation and internal quotation omitted)  When the circumstances suggest ongoing criminal activity, the passage of time recedes in importance.  Jardine, 364 F.3d at 1205.  We have also noted that otherwise stale information may be refreshed by more recent events.  Id.

Even assuming that Mr. Cantu's prior arrests and conviction had grown stale for purposes of demonstrating probable cause, we believe that the more recent events recounted in the affidavit amply refreshed those particular episodes. First, Mr. Cantu had been under intermittent surveillance for over a week before April 14, stemming from information provided by a confidential informant. While the informant's tip alone could not lead in this case to a finding of probable cause, it did provide some indication of ongoing criminal activity. Moreover, we believe the similarity between the circumstances attending Mr.

Cantu's arrest on August 6 and those occurring on April 14 further refreshed this information. Thus it was proper for the state judge to consider Mr. Cantu's prior arrests and conviction in determining whether the police officers had probable cause to search the car.

Mr. Cantu also makes the rather curious argument that by seeking a search warrant, the officers demonstrated their lack of probable cause. This contention lacks merit. Warrantless searches are the *exception*, not the rule. By its terms, the Fourth Amendment intimates a strong preference for warrants. We have previously noted that "we are more likely to affirm a law enforcement officer's determination of probable cause when it is backed by the authority of a search warrant." United States v. Shomo, 786 F.2d 981, 983 (10th Cir. 1986). Mr. Cantu would have us read a nefarious purpose into the actions of a police officer that were likely motivated by a desire to comply with the Constitution. This we will not do.[1]

B.   Mr. Cantu's Detention

Having determined that the search warrant for Mr. Cantu's car issued on a showing of probable cause based on facts *in existence and known to police*

---

[1]Mr. Cantu argues in a concluding paragraph that the warrant to search the residence where additional quantities of marijuana were found should be held invalid and the evidence suppressed because it was obtained through information gained as a result of an illegal search. Because we hold that the search of Mr. Cantu's vehicle was valid, we need not address this argument.

*officers at the time Mr. Cantu was initially stopped*, it follows that the officers had probable cause to search the vehicle at the time of the initial detention. Without question, the officers could have immediately searched the vehicle under the automobile exception to the warrant requirement. See Florida v. Meyers, 466 U.S. 380, 381 (1984) (per curiam) ("[P]olice officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant."); United States v. Oliver, 363 F.3d 1061, 1068 (10th Cir. 2004). Instead, they chose to detain Mr. Cantu for a period of two-and-one-half hours while they obtained a search warrant. Mr. Cantu complains that this detention was unreasonable.

We believe the Supreme Court's decision in Illinois v. McArthur, 531 U.S. 326 (2001), is dispositive here. In McArthur, police officers were informed by the wife of the defendant that he was in possession of drugs. Id. at 329. After the defendant refused consent to search his home, police officers detained him on the front porch for two hours while they obtained a search warrant. Id. Upon execution of the warrant, police officers discovered a small amount of marijuana and drug paraphernalia. Id. The defendant challenged his detention as unreasonable under the Fourth Amendment. A nearly unanimous Supreme Court rejected this argument, finding the detention reasonable for the following reasons: 1) police had probable cause to believe contraband was in the home; 2) police had

- 10 -

good reason to fear that the defendant might destroy the evidence; 3) officers balanced law enforcement needs with the demands of personal privacy by neither searching the trailer nor arresting the defendant while obtaining the warrant; 4) the restraint was only imposed for a limited period of time, i.e., two hours. Id. at 331-32.

Reasons similar to those relied on by the Supreme Court attend this case. As we have previously determined, the police officers had probable cause to believe that Mr. Cantu's vehicle contained illegal narcotics. Moreover, given the inherent mobility of automobiles, the officers had every reason to believe that Mr. Cantu might flee with the drugs and destroy or conceal them were he not detained. We also believe the officers properly balanced law enforcement and private interests in this case. In contrast to an individual's expectation of privacy in his own home, a diminished expectation inheres with automobiles. See Colorado v. Bertine, 479 U.S. 367, 372 (1987); United States v. Arzaga, 9 F.3d 91, 94 (10th Cir. 1993). By seeking a warrant, even when they might have proceeded to search the vehicle without one, the officers evidenced the utmost respect for Mr. Cantu's privacy. Finally, we do not believe the two-and-one-half hour detention in this case was unreasonable. Nothing in the record indicates that the officers failed to act diligently in pursuing and obtaining the warrant. See McArthur, 531 U.S. at 332. Accordingly, we hold that Mr. Cantu's detention was

reasonable.

Mr. Cantu's reliance on United States v. Place, 462 U.S. 696 (1983) is misplaced. In Place, Drug Enforcement Administration agents seized an airline passenger's luggage on *reasonable suspicion* that the bags contained narcotics. Id. at 698-99. The agents detained the passenger and his luggage for 90 minutes before a trained dog alerted to the presence of narcotics, and subsequently held the luggage for a period exceeding 48 hours before obtaining a search warrant. Id. at 699. Executing the warrant, the agents discovered 1,125 grams of cocaine in one of the bags. Id. The Court first held that seizure of property based on reasonable suspicion does not violate the Fourth Amendment, "provided that the investigative detention is properly limited in scope." Id. at 706. On the facts of the case, however, the Court held that the 90-minute detention was unreasonable. Id. at 709-710.

Mr. Cantu's case is readily distinguished from Place. The seizure involved here was based not on reasonable suspicion, but on *probable cause*. As both Place and McArthur make clear, the distinction is significant. Although not expressly stated in the opinion, it is apparent that the dog sniff in Place, combined with previous observations, provided the agents with probable cause to believe the luggage contained narcotics. The rule in Place did not flow from the over 48 hours that passed between the dog sniff and issuance of a warrant. Rather, the

Court confined its reasonableness determination to the 90-minute detention preceding the dog sniff, during which time the officers were acting on reasonable suspicion alone. Id. Thus, McArthur, and not Place, leads us to the conclusion that Mr. Cantu's detention was reasonable.[2]

We find no error in the district court's denial of the motion to suppress. AFFIRMED.

---

[2]Similarly, our decisions in United States v. Villa-Chaparro, 115 F.3d 797 (10th Cir. 1997), and United States v. Rutherford, 824 F.2d 831 (10th Cir. 1987), on which Mr. Cantu relies, are likewise inapplicable in that the detentions involved stemmed from reasonable suspicion, rather than probable cause.