F I L E D

**UNITED STATES COURT OF APPEALS**

**July 29, 2005**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHANNAS ANTON GREEN,

    Defendant - Appellant.

No. 04-5166
(D.C. No. 04-CR-15-EA)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.[**]

Defendant-Appellant Johannas Green was convicted on a conditional plea of guilty of possession of a firearm and ammunition after former conviction of a felony. 18 U.S.C. §§ 922(g)(1), 924(a)(2). He was sentenced to 64 months imprisonment followed by three years supervised release and was fined $3,000. He now appeals the denial of his motion to suppress evidence based upon an

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

unlawful arrest and/or an unlawful search and seizure of his vehicle.  We affirm.


## Background

About 4:30 a.m. on January 4, 2004, Mr. Green drove to the Creek Nation Tulsa Casino, parked his vehicle, and went into the casino.  A sign at the entrance of the casino parking lot warns that all persons and vehicles are subject to search, and that it is unlawful to carry firearms on casino property.  A security guard in the parking lot observed that the wing window on the driver's side of Mr. Green's vehicle was broken.  Suspecting a stolen vehicle, she requested assistance.  While shining a flashlight into the passenger side of the vehicle to see if the steering wheel had been "popped," the guard observed a gun in the middle of the front floorboard.

Meanwhile, Mr. Green emerged from the casino.  Apparently noticing the officers near his vehicle, he went back in only to emerge a few seconds later.  He asked the officers about their presence near the vehicle.  Mr. Green was asked for identification; he responded that his identification was in the vehicle.  A tribal police officer (but one that was not cross-deputized) requested Mr. Green's keys several times.  When the keys were not forthcoming, the officer told him that he would be arrested for disobeying a police officer and for having a firearm when it was prohibited by tribal law.  Mr. Green then fled the scene.

Thereafter, another tribal police officer, one cross-deputized by the Bureau of Indian Affairs, arrived on the scene and was briefed about Mr. Green and his vehicle. The cross-deputized officer recalled an encounter with Mr. Green less than a month previously. During that encounter, the cross-deputized officer learned that Mr. Green was residing in a halfway house for recently released inmates. He also recalled that Mr. Green had broken the vehicle's window in order to retrieve keys.

The cross-deputized officer personally observed the gun in Mr. Green's vehicle, and then had the vehicle impounded and inventoried after deciding that it had been abandoned. In response to a variety of theories urged by Mr. Green for suppression of the evidence, the district court held that (1) the law enforcement personnel acted on reasonable suspicion in investigating Mr. Green's vehicle as a possible stolen vehicle, (2) though the non cross-deputized law enforcement personnel may have lacked the authority to arrest Mr. Green in connection with a federal offense, they certainly had the authority to detain and refer him to the proper authorities, (3) Mr. Green voluntarily abandoned the vehicle upon his flight. In the alternative, the district court held that (4) the cross-deputized tribal officer had probable cause to search and inventory the vehicle based upon his suspicion that Mr. Green was a convicted felon and his observation of the gun in the vehicle.

On appeal, Mr. Green argues that the search and seizure by the tribal police was unlawful. He contends that the district court erred in finding that (a) Mr. Green voluntarily abandoned his vehicle, (b) the tribal police had probable cause to arrest Mr. Green or authority to impound and inventory his vehicle with a search warrant. The predicate of Mr. Green's claims is that tribal law cannot be enforced against non-Indians and consequently, the events that led to Mr. Green's flight were improper. Mr. Green argues that the search and seizure is based upon probable cause developed after it occurred, and that a search warrant was required. He argues that the tribal police lacked a search warrant, probable cause, consent from Mr. Green, or exigent circumstances.

Discussion

When reviewing a district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government, accepting the district court's factual findings unless clearly erroneous. United States v. Cantu, 405 F.3d 1173, 1176 (10th Cir. 2005). Fourth amendment reasonableness is reviewed de novo. Id.

The district court did not err in denying the motion to suppress. Tribal criminal jurisdiction may extend to both member and non-member Indians. 25 U.S.C. § 1301(2); United States v. Lara, 541 U.S. 193, 209 (2004). It does not

extend to non-Indians. <u>Oliphant v. Suquamish Indian Tribe</u>, 435 U.S. 191, 195 (1978). That said, tribal officers do have the authority to investigate violations of law on tribal land, and detain persons, including non-Indians, suspected of violating the law. <u>Duro v. Reina</u>, 495 U.S. 676, 696-97 (1990) ("Tribal law enforcement authorities have the power to restrain those who disturb public order on the reservation, and if necessary, to eject them. Where jurisdiction to try and punish an offender rests outside the tribe, tribal officers may exercise their power to detain the offender and transport him to the proper authorities."); <u>United States v. Terry</u>, 400 F.3d 575, 579-80 (8th Cir. 2005). Moreover, tribal authorities may investigate unauthorized possession of firearms on gaming premises which is proscribed by tribal law. <u>See</u> Muscogee (Creek) Nation Code Ann., tit. 21., § 5-116(C).

An officer may seize evidence of a crime if it is in plain view, its incriminating character is immediately apparent, and the officer has a lawful right of access to the item. <u>Horton v. California</u>, 496 U.S. 128, 136-37 (1990). The security guard certainly could investigate whether Mr. Green's vehicle was in fact stolen. We have suggested that incriminating evidence that may be seen through the window of a vehicle may be in plain view. <u>United States v. Sparks</u>, 291 F.3d 683, 692 (10th Cir. 2002). This view may be assisted by a flashlight without any infringement of Fourth Amendment rights. <u>Texas v. Brown</u>, 460 U.S. 730, 739-40

(1983) (plurality opinion); United States v. Ortiz, 63 F.3d 952, 954 (10th Cir. 1995).

Having personally observed the gun and knowing Mr. Green's background as a felon, we have no doubt that the cross-deputized officer had probable cause to conclude that the gun was evidence of a crime. Thus, no warrant was required for law enforcement to seize the gun. See Soldal v. Cook County, Ill., 506 U.S. 56, 68 (1992) (seizure of property in plain view without a warrant is authorized only when probable cause exists to associate property with criminal activity); Sparks, 291 F.3d at 690-91; United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995). Given our holding, it is unnecessary to address whether Mr. Green abandoned the vehicle thereby justifying the inventory search and whether Mr. Green gave implied consent to search his vehicle by entering the casino property.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge