**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 3, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ROGER LEE HENDERSON,

    Defendant-Appellant.

No. 05-6303
(W.D. Okla.)
(D.Ct. No. 05-CR-2-L)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Circuit Judge, and **BARRETT** and **BRORBY**, Senior
Circuit Judges.

---

    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

    Appellant Roger Lee Henderson appeals his conviction for possession of

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

pseudoephedrine, a listed chemical, with knowledge or reasonable cause to believe the pseudoephedrine would be used to manufacture methamphetamine, a controlled substance, in violation of 21 U.S.C. § 841(c)(2). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

On July 23, 2004, John Stanbery, a police officer with the District Nine Drug Task Force covering Payne and Logan Counties, Oklahoma, submitted an affidavit in support of a search warrant for property near Stillwater, Oklahoma, including a residence and a metal outbuilding. In his affidavit, Officer Stanbery averred that twelve hours prior to the execution of his affidavit supporting the warrant, a confidential informant told authorities 1) he had been in contact with Mr. Henderson, who possessed "$1,800 worth of Max Brand pseudo 60's" (which is approximately nine cases of pills); 2) Mr. Henderson was currently traveling from Texas to the residence of Gail Prickett at 8423 South Perkins Road in rural Payne County, Oklahoma; and 3) when Mr. Henderson arrived at the residence, he would begin the process of manufacturing methamphetamine in a metal building located behind the residence. Officer Stanbery averred the same confidential informant had provided authorities with information in five different cases over the past three years, including information on the manufacture and distribution of methamphetamine, which had proven reliable, credible, and accurate and led to six convictions. In the affidavit, Officer Stanbery explained that the same

informant later told authorities he had in fact "observed in excess of 1500 pseudophedrine [sic] tablets in Roger Henderson's possession at the residence located at 8423 South Perkins Road," and that Mr. Henderson also possessed methamphetamine.

In addition, Officer Stanbery's affidavit provided corroborating information he obtained from another informant known to the drug task force, who advised he had been in the metal outbuilding within the last six months and observed items used to manufacture methamphetamine in the building's rafters. One individual also informed Officer Stanbery that Mr. Henderson smelled of ammonia within the past seventy-two hours, while another had seen methamphetamine in the last month in the residence located on the property. In his affidavit, Officer Stanbery also provided detailed background information on Mr. Henderson's and Ms. Prickett's several prior criminal contraband arrests and charges. Based on this information, as well as an ongoing investigation being conducted by the drug task force and the Payne County Sheriff's Office, together with his own experience and knowledge, Officer Stanbery, through his affidavit, sought a search warrant for the property identified, and purported the following would likely be found on the premises:

> Methamphetamine, precursors used in the manufacturing of methamphetamine including but not limited to Pseudoephedrine, Iodine, Anhydrous Ammonia, Red Devil Lye, Acetone, Xylene,

Lithium, Red Phosphorus, Hydrogen Peroxide, etc. Drug paraphernalia, including but not limited to scales, baggies, pipes, needles, items of dominion and control, items of personal property tending to establish the identity of the person or persons in control or possession of the place. Including but not limited to utility company receipts, repair bills, photographs, keys, and articles of clothing. Records pertaining to the sales of narcotics, including but not limited to hand written records, computer hard drives and discs, and proceeds from the sales of narcotics.

Based on the information contained in the affidavit, a judge issued a search warrant for the property, including any outbuildings located on that property, and authorized the authorities to search for the same items listed in the affidavit. The warrant did not authorize an unannounced entry. Officer Stanbery led the team executing the warrant on the metal outbuilding while another officer simultaneously led another team in executing the warrant on the residence. Prior to entering, Officer Stanbery testified he opened a closed, unlocked door to the metal outbuilding and announced, "Police! Search warrant!" as he crossed the threshold. In the outbuilding, police found Mr. Henderson, together with approximately 3,744 tablets, or 224 grams, of pseudoephedrine and other items associated with the use and manufacture of methamphetamine, including rock salt and a type of acetone; various used and unused syringes; a scale and numerous baggies; and various unidentified white residues, powders, and substances. Authorities also found a City of Stillwater utility services contract in the name of Roger Lee Henderson for an address other than the property subject to the search,

and found no items, included bedding or clothing, to establish Mr. Henderson or anyone resided or slept in the outbuilding.

Following Mr. Henderson's arrest, the district court held a hearing on his motion to suppress the evidence obtained from the metal outbuilding. At the hearing, Officer Stanbery testified to the information surrounding the affidavit supporting the search warrant and also testified he was familiar with the residence and surrounding area because: 1) he knew it was where Gail Prickett (also known as Gail Pendelton) resided; 2) it had been the subject of several ongoing drug investigations, including the manufacture and distribution of methamphetamine, which had been going on at that location or in that area; and 3) he had been at that residence prior to the execution of the warrant on July 23, 2004, and was able to see certain "types of things" in the building while present outside of it.[1] He also testified he knew Mr. Henderson lived in another county, he had no information leading him to believe Mr. Henderson lived in the metal outbuilding or at the residence on that property, and on executing the search warrant, he found no evidence anyone lived in the building.

Mr. Henderson also testified at the suppression hearing, stating he received

_____

[1] The pages of the hearing transcript identifying the type of items seen in the building by the officer were omitted in the record on appeal submitted by Mr. Henderson.

permission from the owner of the outbuilding to both work on his car and sleep there, although he did not state when or how often he slept in the outbuilding. Based on the evidence presented, the district court denied Mr. Henderson's motion to suppress, after which Mr. Henderson waived his right to a jury trial, and a trial by judge commenced. The district court found him guilty of violating 21 U.S.C. § 841(c)(2), based in part on the "parties' stipulation" and Mr. Henderson's testimony in response to the questions posed by the court – neither of which are contained in the record on appeal.[2] The district court then sentenced Mr. Henderson to 108 months imprisonment.

On appeal, Mr. Henderson contends "18 U.S.C. § 841(c)(2)" unconstitutionally creates, defines, and punishes "what is in reality nothing more than [a] 'thought crime.'" We assume he is referring to 21 U.S.C. § 841(c)(2),

---

[2] Mr. Henderson has not provided a copy of the stipulation entered into by the parties, and provided only one page of his testimony during direct examination by his counsel, which does not include the court's questioning of the defendant and his responses. While Mr. Henderson's brief also references the affidavit and search warrant contested in his appeal, he failed to designate them for the record and provided only eleven of the thirty-nine pages of the transcript on his suppression hearing and trial. We remind Mr. Henderson's counsel that it is the appellant's responsibility to provide us with a proper record on appeal, and if the appellant's appendix is insufficient to permit assessment of his claim of error, we must affirm. *See Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000)*; Rios v. Bigler*, 67 F.3d 1543, 1553 (10th Cir. 1995) (citing Fed. R. App. P. 10(b)(2)). Nevertheless, because the government has provided both the affidavit and search warrant at issue, we have been afforded sufficient means to review the issues Mr. Henderson presents on appeal.

which the district court convicted him of violating, and which states:

> Any person who knowingly or intentionally -- (1) possesses a listed chemical with intent to manufacture a controlled substance except as authorized by this subchapter; (2) possesses or distributes a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance except as authorized by this subchapter ... shall be fined in accordance with Title 18 or imprisoned not more than 20 years in the case of a violation of paragraph (1) or (2) involving a list I chemical ....

21 U.S.C. § 841(c)(1)-(2). In support of his argument challenging the constitutionality of § 841(c)(2), Mr. Henderson asserts no requirement exists in the statute for the purpose of making the government show or prove he had the knowledge, thought, or state of mind to possess the contraband. Instead, he likens it to a form of clairvoyance which the law simply imputed on him as a "thought crime." To support his argument, he refers on appeal and in the record to the following hypothetical, theoretical, or fictional examples to demonstrate that criminal possession must be more than the mere thought of possession: 1) the late Christopher Reeve's paralysis and whether he could still possess items even though he was physically incapable of possessing them; 2) the astronaut Neil Armstrong and whether he could possess items on earth even as he walked the face of the moon; 3) the "thought police" in George Orwell's fictional book entitled "1984," and whether the statute at issue in this case constitutes a similar "thought crime" imputed by the police; 4) lyrics from a song, written by Frank Loesser and sung by Dean Martin, entitled "Standing on the Corner," which

-7-

states, in part, "they can't put ya in jail for what yer thinkin'"; 5) Catholic or religious dogma holding that only God, and not the government, can read one's mind; 6) a suitcase full of heroin in a bus locker in Bombay, India, and whether a drug dealer in Brooklyn can possess it; and 7) the question of whether a judge could possess a pen simply because an advocate lays it on his bench, just as the police attributed Mr. Henderson with possessing the contraband merely because of his proximity to it. In addition, in a somewhat less colorful argument, he appeals the district court's denial of his suppression motion, claiming he had standing to challenge the search, the police unlawfully executed the search warrant, and the search involved an illegal "general search warrant."

We begin with Mr. Henderson's contention 21 U.S.C. § 841(c)(2) is unconstitutional as a "thought crime." This court previously considered and upheld the constitutionality of § 841(c)(2), stating it contains a sufficient "mental state" or "mens rea" requirement because the words "reasonable cause to believe" involve a subjective inquiry into whether the defendant knew or had reasonable cause to believe the listed chemical would be used to manufacture a controlled substance. *See United States v. Saffo*, 227 F.3d 1260, 1268 (10th Cir. 2000). We determined the statutory language requires "scienter to be evaluated through the lens of this particular defendant, rather than from the [perspective] of a hypothetical reasonable man," and "[i]n this context, the reasonable cause to

believe standard is one akin to actual knowledge." *Id.* at 1268-69 (quotation marks and citation omitted). Thus, based on our clear precedent, we reject Mr. Henderson's argument § 841(c)(2) is unconstitutional for a lack of knowledge, thought, or state of mind requirement.[3] His attempt to distinguish *Saffo* because it involved the issue of a sufficient *mens rea* requirement and did not discuss the issue of the statute being a mere "thought crime" is unavailing, if not nonsensical. As to Mr. Henderson's theoretical and other arguments to support his contention § 841(c)(2) is unconstitutional as a "thought crime," they are unsupported in law and otherwise unpersuasive.

Next, we turn to Mr. Henderson's argument the district court erred in denying his suppression motion. First, Mr. Henderson suggests he had "standing" to challenge the search because the owner gave him permission to use and sleep

---

[3] To the extent Mr. Henderson is somehow asserting the government did not show he had actual or constructive possession of the contraband as required by the statute, he has not provided a sufficient record for full determination of the issue on appeal. *See Scott*, 216 F.3d at 912; *Rios*, 67 F.3d at 1553. For this reason, we decline to consider this issue any further, other than to note Mr. Henderson's presence with the large quantity of pseudoephedrine (approximately 3,744 tablets or 224 grams), along with other substances used to make methamphetamine, in an outbuilding he alleged he obtained permission to use from the owner, sufficiently establishes his possession of the contraband and knowledge or reason to believe it would be used to manufacture methamphetamine. Arguably, it is also unlikely the owner of the building would place such a significant amount of pseudoephedrine and other substances used to make contraband in a building used by, or in the possession of, someone who did not know the purpose for which it would be used.

in the outbuilding. He also argues the warrant was unlawfully executed because the police 1) did not knock before they announced their presence; and 2) failed to wait to enter until admittance was refused or constructively refused, as required by law. Finally, he contends the district court issued an illegal "general search warrant," given it "not only covers methamphetamine and pseudoephedrine, but also a multitude of other items, for which *no factual basis* whatever is offered in the search warrant affidavit, to justify their inclusion in the list of things to be seized," thereby allowing a "fishing expedition." Specifically, Mr. Henderson argues the warrant was overbroad and unsupported by the affidavit because he was convicted under § 841(c)(2) of possession of pseudoephedrine, with knowledge or reasonable cause to believe it would be used to manufacture methamphetamine, but the warrant included permission to search for items other than pseudoephedrine and methamphetamine, including Red Devil lye; items of personal property tending to establish identity, such as keys; and items relating to the sale of narcotics, such as computer hard discs.

Our standard of review on a motion to suppress is set forth in *United States v. Higgins*, which instructs:

> On review of a denial of a motion to suppress evidence, we consider the totality of the circumstances and view the evidence in a light most favorable to the government. We accept the district court's factual findings unless those findings are clearly erroneous. The credibility of witnesses, the weight to be given evidence, and the

-10-

reasonable inferences drawn from the evidence fall within the province of the district court. Keeping in mind that the burden is on the defendant to prove that the challenged search was illegal under the Fourth Amendment, the ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable de novo.

282 F.3d 1261, 1269-70 (10th Cir. 2002) (citation omitted). Our decision in *Higgins* further instructs "[a] defendant may not challenge an allegedly unlawful search or seizure unless he demonstrates that his own constitutional rights have been violated," and, in the context of a search, "the defendant must show that he had a subjective expectation of privacy in the premises searched and that society is prepared to recognize that expectation as reasonable." *Id.* at 1270 (quotation marks and citations omitted). We review *de novo* the issue of whether the defendant's expectation of privacy is one society would consider reasonable for the purpose of determining whether a district court properly determined the defendant lacked the capacity to challenge the search of the property at issue. *Id.*

In looking at the issue of a guest's expectation of privacy, the Supreme Court has held society recognizes a houseguest has a legitimate expectation of privacy in a host's home. *See Minnesota v. Olson*, 495 U.S. 91, 98 (1990). However, it has distinguished between the protection afforded an overnight houseguest present in a host home by invitation of the householder from "one who is merely present with the consent of the householder" and has no such protection.

-11-

*Minnesota v. Carter*, 525 U.S. 83, 90 (1998). In addition, with respect to the expectation of privacy one has in a building or structure other than the residence, we have held the protections of the Fourth Amendment may extend beyond the home itself to the curtilage of the house, which is "the area that harbors the intimate activity associated with the sanctity of a [person's] home and the privacies of life." *United States v. Cavely*, 318 F.3d 987, 993 (10th Cir. 2003) (quotation marks and citation omitted). However, a defendant claiming a Fourth Amendment "invasion of the curtilage" violation has the burden of establishing a legitimate expectation of privacy in that curtilage. *Id.* at 994.

With these principles in mind, we must reject Mr. Henderson's contention he had a subjective expectation of privacy in the outbuilding sufficient to challenge the search by means of a motion to suppress.[4] First, it is clear Mr.

---

[4] Mr. Henderson incorrectly suggests the district court made a determination he lacked standing to contest the search. The district court instead held that "[a]lthough the issue of standing is a threshold issue, the court finds that it need not resolve this issue as ... neither the issuance nor the execution of the warrant was constitutionally infirm." In this case, however, we find it prudent to make a determination on Mr. Henderson's capacity to challenge the search and seizure, and note that in reviewing a district court's ruling on a motion to suppress, we may affirm the district court "'on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.'" *United States v. Edwards*, 242 F.3d 928, 935 (10th Cir. 2001) (quoting *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994)). We further note "the Supreme Court has repeatedly insisted that we not use the term 'standing' ... for a defendant's capacity to challenge a search." *Higgins*, 282 F.3d at 1270 n.3.

Henderson is not claiming he was an overnight guest at the owner's residence. Other than his self-serving assertion he spent some unidentified nights in the outbuilding with the owner's permission, nothing in the record provided on appeal remotely establishes Mr. Henderson should be afforded the protections of an overnight houseguest. At best, he was "merely present with the consent of the householder" which is a status afforded no Fourth Amendment protection. *See Carter*, 525 U.S. at 90. In addition, the record provided fails to establish the outbuilding constitutes curtilage of the house, to which the Fourth Amendment protection against unreasonable search and seizures extends, and even if it did, Mr. Henderson has not shown such protection extended beyond the outbuilding owner to him. Thus, Mr. Henderson has discernibly failed to carry his burden in establishing he possessed a legitimate expectation of privacy in the outbuilding, and therefore, he has failed to show he had the capacity to challenge the search and seizure therein.

Next, with respect to Mr. Henderson's knock and announce argument, the district court determined no constitutional infirmity existed because Officer Stanbery was not required to knock, but only announce his presence and purpose; however, it did not address Mr. Henderson's argument Officer Stanbery did not

wait a sufficient amount of time for refusal or constructive denial of admittance.[5]

Arguably, if Mr. Henderson possessed the capacity to contest the search of the outbuilding, his argument may have some merit, given Officer Stanbery testified he simultaneously entered the outbuilding and announced his presence, apparently without waiting any length of time for a response or sufficient time to be deemed a constructive denial with respect to entry.[6] However, because we determined Mr. Henderson failed to demonstrate he retained a reasonable expectation of privacy in the outbuilding sufficient to challenge the search, he cannot dispute the circumstances surrounding the officer's entry into the outbuilding. Therefore, we

---

[5] Giving Mr. Henderson the benefit of the doubt, it appears from the limited record provided he raised this issue in his motion to suppress when he stated in one sentence, "[u]nannounced entry by force of any kind is justified only when, after announcement of authority and purpose, the officers are *refused admittance*." (Emphasis added.)

[6] "The Fourth Amendment, ... includes a general presumption that police officers executing a search warrant for a residence must announce their presence and authority before entering." *See United States v. Moore*, 91 F.3d 96, 98 (10th Cir. 1996). After law enforcement officers properly announce their presence and purpose, "[i]f the occupants do not admit the officers within a reasonable period of time, the officers may be deemed to be constructively refused admittance, and they may then enter by force." *United States v. Gay*, 240 F.3d 1222, 1228 (10th Cir. 2001) (quotation marks and citation omitted). However, where an officer forcibly opens a door while the same or another officer simultaneously announces their presence and purpose, insufficient time elapses for constructive refusal of admittance. *See Moore*, 91 F.3d at 97-99. In addition, the use of force is not an essential element of the statute, and therefore, the "unlatching" of a closed, unlocked door is an "unannounced intrusion" in violation of the statute, while entry through an already open door is not. *See United States v. Remigio*, 767 F.2d 730, 732-33 (10th Cir. 1985) (relying on *Sabbath v. United States*, 391 U.S. 585, 590 (1968)).

affirm the district court's decision with respect to this issue, albeit on other grounds.

Finally, because Mr. Henderson did not have a reasonable expectation of privacy in the outbuilding sufficient to challenge the search, we must also reject his contention an illegal "general search warrant" was issued. Alternatively, even if we considered Mr. Henderson's argument the warrant was overly broad and unsupported by the affidavit because it covered more than pseudoephedrine and methamphetamine, his argument lacks merit.[7] First, Officer Stanbery's affidavit, asserting he believed Mr. Henderson to be in possession of items used to manufacture methamphetamine at the property identified, was based on information from a confidential informant whose past information had consistently proven reliable and which was corroborated by other witnesses, the officer's own knowledge, and an ongoing investigation. Thus, the affidavit established a nexus between the place to be searched and the items to be seized for the purpose of creating the probable cause necessary for a warrant to issue.

---

[7] "In determining whether a warrant is supported by probable cause, we assess the sufficiency of a supporting affidavit based on the totality of the circumstances." *See United States v. Cantu*, 405 F.3d 1173, 1176 (10th Cir. 2005). We give the district court judge's determination of probable cause great deference and limit our review to ensuring its determination has a substantial basis under the circumstances for finding probable cause. *Id.* at 1176-77. In addition, "we review de novo whether the warrant was overbroad or insufficiently particular under the Fourth Amendment." *United States v. Guidry*, 199 F.3d 1150, 1154 (10th Cir. 1999) (quotation marks and citation omitted).

-15-

*See United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999).  For these reasons, the district court did not err in determining probable cause existed for issuance of the warrant.

With respect to the items listed in the warrant itself, they mirrored those listed in Officer Stanbery's affidavit, which he believed would be found in the outbuilding in support of the methamphetamine manufacturing and distribution operation he described at that location.  While the list contained some generally-described or broadly-referenced items of personal property (such as keys), and records relating to the sale of narcotics (such as computer hard discs), the warrant, together with the attached affidavit, was sufficiently particular in requiring the items, however broadly-referenced, to be related to the methamphetamine operation or identification of those involved.  *See United States v. Sullivan*, 919 F.2d 1403, 1424 & n.31 (10th Cir. 1990).  Like the warrant here, "[w]e have upheld search warrants cast in comparably broad terms, where the subject of the search was a drug trafficking or drug dealing business, and where circumstances permitted only a more general listing of the items to be seized."  *United States v. Wicks,* 995 F.2d 964, 973 (10th Cir. 1993).  *See also Sullivan*, 919 F.2d at 1424 & n.31 (upholding search warrant, which included references to personal property, such as receipts, phone records, utility bills, and address books, related to an ongoing drug trafficking enterprise).

Our analysis does not change simply because Mr. Henderson was later convicted under § 841(c)(2), which specifically pertains to the possession of a listed chemical used in manufacturing methamphetamine, and which, in this case, involved his possession of pseudoephedrine. Instead, the warrant and affidavit in support thereof sufficiently described an operation for the manufacture of methamphetamine, including the items the officer believed would be found tending to prove that the large amount of pseudoephedrine Mr. Henderson possessed would be used for the manufacture of said methamphetamine. For that reason, even though Mr. Henderson claims the warrant should have only listed methamphetamine and pseudoephedrine, it reasonably included: 1) precursors commonly used in the manufacture of methamphetamine, which, as Officer Stanbery testified, include Red Devil lye; and 2) other personal property items and records tending to establish the manufacture of methamphetamine and the identity of those involved in its manufacture. Thus, under the circumstances presented, Mr. Henderson has not shown an impermissibly "general search warrant" was issued. Accordingly, the district court did not err in determining the warrant "was sufficiently limited and specific for the officers to properly determine which items to seize."

For these reasons, we **AFFIRM** Mr. Henderson's conviction and sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge
