**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 7, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

ROBERT E. ADAMS,

    Defendant - Appellee.

No. 14-2138
(D.C. No. 1:13-CR-03301-JAP-1)
(D. New Mexico)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, Chief Judge, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

The government investigated Mr. Robert Adams based on suspicion that he was smuggling guns into the United States. *See* 18 U.S.C. §§ 545, 923 (2012).[1] To aid in the investigation, the government obtained search warrants for Mr. Adams' residential and business properties, permitting law enforcement to look for firearms, records, and other evidence of gun smuggling.

---

[*]     This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value under Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

[1]     The government also investigated Mr. Adams for other possible offenses. But in this appeal, the government relies solely on the allegations involving gun smuggling.

After conducting a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), the district court concluded that each warrant had been based in part on false statements recklessly included in the accompanying affidavit. After excising these parts of the affidavit, the district court (1) found there was no probable cause and (2) granted Mr. Adams' motion to suppress the evidence found in the searches.

The government appeals. In deciding this appeal, we must ask: Was there probable cause for the searches notwithstanding the absence of evidence of gun smuggling in the last three years? Concluding that probable cause did not exist, we affirm.

## I. Standard of Review

We review de novo the district court's legal conclusion that the affidavit did not establish probable cause. *See United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008) ("Whether a corrected affidavit supports a finding of probable cause is a question of law that we review de novo."). To determine whether probable cause existed, we consider whether the affidavit created a fair probability that evidence listed in the warrant would be found in Mr. Adams' residential or business properties. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

## II. Probable Cause

In making this determination, we consider the information in the affidavit collectively rather than in isolation. *United States v. Traxler*, 477

F.3d 1243, 1247 (10th Cir. 2007). The information falls into four categories:

1. Mr. Adams' storage of guns in Canada,

2. his trips to Canada,

3. his failure to file tax returns, and

4. evidence discovered in regulatory inspections in 2006 and 2009.

In considering these categories, we focus on whether the evidence would collectively create a fair probability that law enforcement would find guns or other indications of gun smuggling when searching Mr. Adams' residential and business properties.

## A. Storage of Guns in Canada

According to the affidavit, 132 of Mr. Adams' guns were found in a Canadian storage unit. All had been purchased from a Canadian auction house and stored for roughly 10 months.

### 1. Mr. Adams' Reasons for Storing the Guns

In these circumstances, the government argues that Mr. Adams was planning to smuggle some or all of the 132 guns into the United States. For this argument, the government theorizes that Mr. Adams kept the guns in storage until he found a buyer and when he did, he would smuggle the guns into the United States or ship them directly to the buyer, circumventing U.S. taxes and regulations.

The problem with that theory is that there is nothing in the affidavit to tie the storage of Canadian guns to a plan to smuggle them. For example, the affidavit does not provide any evidence that Mr. Adams

- was looking for a buyer while he was storing the guns in Canada or

- had plans to smuggle the guns or ship them to a buyer.

In the absence of any such evidence, the court had no reason to infer an intent to smuggle guns from Mr. Adams' decision to store his guns in Canada.

**2. Mr. Adams' Omission of 51 Guns on the Form 6A**

The government points out that Mr. Adams failed to list 51 of the stored guns on an import form ("Form 6A"), though he had listed many of these guns on a request for an import permit ("Form 6"). But this fact does not create an inference of gun smuggling.

To bring guns into the United States, an importer must obtain a permit by completing a Form 6. 27 C.F.R. § 478.112(b)(1)-(2)(i) (2012). When the guns are eventually brought into the United States, the importer must submit a Form 6A to obtain the firearms from customs. 27 C.F.R. § 478.112(c)(1) (2012). Thus, Mr. Adams would not have needed to list the guns in the Form 6A until he actually imported them. *Id.*

Mr. Adams included 51 guns on a Form 6 that he had not listed on a corresponding Form 6A. The government suggests that Mr. Adams omitted

4

the firearms on the Form 6A because he was planning to smuggle them. But this suggestion is circular: Unless one begins with the assumption that Mr. Adams is a gun smuggler, his omission of the 51 guns on the Form 6A could not supply evidence that he was involved in gun smuggling. After all, why would Mr. Adams alert U.S. authorities of plans to import guns that he actually planned to smuggle?

The government answers with a theory: Mr. Adams needed the Form 6s to buy the guns in Canada. Appellant's App., vol. IV, at 722; Appellant's Opening Br. at 26-27 (Dec. 3, 2014); Oral Arg. at 7:37-7:57. But as the government conceded in oral argument, there is nothing in the affidavit suggesting the need for a Form 6 to buy guns in Canada. Oral Arg. 7:32-7:52. Thus, the affidavit does not suggest anything sinister in Mr. Adams' listing of the guns in the Form 6s and omission of the guns in the Form 6As.

### 3.    Mr. Adams' Inclusion of 81 Guns on the Form 6A

The affidavit also suggests a sinister motive for the 81 guns *included* on the Form 6A:

> The review [by a Canadian police officer] determined that all of the weapons listed on [the Form 6A] that [Mr. Adams] had proposed to import into the United States were accounted for in the [Canadian Police Department's] seizure of weapons on July 27, 2012, that was [sic] illegally stored in a Calgary, Alberta, Canada, storage Locker by [Mr. Adams]. [Mr. Adams] therefore falsified [Form 6A], as he never intended to import the dozens of firearms he secreted into his Canadian Storage locker.

5

Appellant's App., vol. I, at 73. This inference of "falsification" is legally invalid and illogical.

The Form 6A is not submitted until the importer begins the importation process. 27 C.F.R. § 478.112(c)(1) (2012). Thus, if Mr. Adams had inaccurately included the guns on the Form 6A, he would not have falsely represented anything to the government until he began the importation process.

The affiant's theory of "falsification" is not only invalid under the regulations but also illogical. For roughly ten months, Mr. Adams stored the guns, listing some and omitting some. For the guns *omitted* on the Form 6A, the affiant infers from the omission that Mr. Adams never intended to lawfully import the guns. For the guns *included* on the Form 6A, the affiant infers from the inclusion that Mr. Adams was falsifying the form because he never intended to lawfully import the guns. The government's theory illustrates the adage: "Heads I win, tails I win."

**4. Probable Cause to Believe the Evidence Would Be at Mr. Adams' New Mexico Properties in 2013**

But let's assume that Mr. Adams was planning to smuggle all of the 132 guns from Canada in 2011. The search warrants were not to search the storage unit; they were to search Mr. Adams' properties in Albuquerque, New Mexico. The court could issue the search warrants only if there was a fair probability that Mr. Adams had guns, records, or other evidence of

6

smuggling in those properties. *United States v. Long*, 774 F.3d 653, 658 (10th Cir. 2014), *cert denied*, __ U.S. __, 135 S. Ct. 2068 (2015). Even if Mr. Adams had intended to smuggle the guns from Canada, nothing in the affidavit would have suggested the presence of smuggled guns, records, or other gun-smuggling evidence in Mr. Adams' New Mexico properties in 2013 (when the warrants were signed). *See United States v. Snow*, 919 F.2d 1458, 1459-60 (10th Cir. 1990) ("Probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched.").

5.      **Summary**

In these circumstances, the discovery of Mr. Adams' guns in his Canadian storage unit would not have contributed to a finding of probable cause for a search of Mr. Adams' New Mexico properties.

B.      **Mr. Adams' 2011 Trips to Canada**

The government also argues that Mr. Adams' 2009 and 2011 trips to Canada would have created probable cause of gun smuggling. We disagree.

According to the affidavit, Mr. Adams made only two trips within three years of the warrants. Both trips were in 2011. For one of these trips, Mr. Adams flew to and from Canada. It is unlikely that Mr. Adams could have smuggled guns through an airport, and the government has not suggested otherwise.

For the other 2011 trip, Mr. Adams flew to Canada but did not buy an airline ticket to return to the United States. Based on the absence of a return ticket, the government suggests that Mr. Adams drove back into the United States to smuggle a firearm, a Gevarm .22 LR caliber rifle. Appellant's Reply Br. at 16 (Mar. 12, 2015). The government adds that if Mr. Adams smuggled one gun, the court could infer an intent to smuggle more guns later. *Id.* The government's argument is waived and based on contradictory information.

In its opening brief, the government referred to the missing Gevarm firearm. But the government did not argue that the court could infer a broader intent from the smuggling of a single gun. *See* Appellant's Opening Br. at 18-19, 27 (Dec. 3, 2014). Instead, the government waited to make this argument in the reply brief, which was too late. *See United States v. Gregoire*, 425 F.3d 872, 878 (10th Cir. 2005) (stating that an argument was waived when it had been newly raised in the appellant's reply brief).

The government's argument is not only waived but also based on contradictory information. In one paragraph, the affiant lists the Gevarm as one of the guns seized from the Canadian storage unit. But in the next paragraph, the affiant states the Gevarm was missing from the guns seized. *Compare* Appellant's App., vol. I, at 73, *with* Appellant's App., vol. I, at

8

75. In light of the contradiction, the court would have no way of knowing whether the gun had been seized.

In these circumstances, the 2011 trips to Canada would not contribute to a finding of probable cause.

## C. Tax Evasion

According to the affidavit, Mr. Adams failed to file federal income tax returns (2006 and 2008-2011), state income tax returns (2010-2011), and federal firearm and ammunition excise taxes (2006-2011). In addition, Mr. Adams' companies (Adams International, SW LLC, Adams Guns, Bob Adams LLC, and Adams Trust LLC) failed to file tax returns between 2006 and 2011. The government argues that these acts of tax evasion support probable cause on a charge of gun smuggling.

The threshold issue is whether the government waived reliance on the evidence of tax evasion. According to Mr. Adams, the government conceded in district court that the evidence of tax evasion had not supported a finding of probable cause. But Mr. Adams misinterprets the government's concession. The government conceded only that it could not avoid suppression of the evidence based on probable cause regarding tax evasion. The government never questioned the ability to infer gun smuggling from Mr. Adams' failure to file tax returns. Thus, the government has not waived reliance on the tax evidence.

9

For the sake of argument, we can assume that the failure to file tax returns could constitute evidence that Mr. Adams wanted to conceal the amount or source of his income. With this assumption, we might also be able to infer that Mr. Adams had earned money unlawfully. But the search warrants were based on a specific type of law-breaking: gun smuggling. The tax evidence provides no reason to tie Mr. Adams' income to a gun smuggling operation.

**D.     Evidence Involving the Inspections in 2006 and 2009**

The government inspected Mr. Adams' business in 2006 and 2009. In connection with these inspections, the affiant states that

- Mr. Adams failed to cooperate,

- impeded the inspections by transferring guns to his personal collection,

- furnished records with significant discrepancies, and

- violated federal regulations by advertising the sale of guns without importer's marks.

The government argues that this evidence supports probable cause on a charge of gun smuggling.

But this evidence predates the signing of the warrants by over three years. When authorities investigate gun smuggling, they would not reasonably expect the evidence to remain stationary for years at a time. *See United States v. Roach*, 582 F.3d 1192, 1202 (10th Cir. 2009) ("[F]irearm . . . trafficking [is] not the sort[] of crime[] whose evidence is likely to

10

remain stationary for years at a time."). Even if Mr. Adams had smuggled guns from 2006 to 2009, the court could not reasonably have expected those guns to remain in Mr. Adams' Albuquerque properties over three years later. Thus, the government conceded that the evidence was stale. Oral Arg. at 4:08-4:38.[2] Because that evidence was stale, it would not contribute to a finding of probable cause. *See United States v. Cantu*, 405 F.3d 1173, 1177 (10th Cir. 2005) ("A search warrant may not issue if based upon information that has grown stale.").

## III. Summary

Because the excised affidavit does not supply probable cause for a 2013 search of Mr. Adams' New Mexico properties, we affirm the district court's order granting the motion to suppress.

Entered for the Court

Robert E. Bacharach
Circuit Judge

---

[2] To overcome this concession, the government stated in oral argument that the evidence had been "freshened" by the discovery that Mr. Adams (1) was storing 132 guns in a Canadian storage unit and (2) had taken recent trips to Canada. Oral Arg. at 4:49-5:28. In theory, otherwise stale information can be refreshed by more recent events. *United States v. Cantu*, 405 F.3d 1173, 1177-78 (10th Cir. 2005). But as discussed above, these two categories of information could not collectively create a fair probability that law enforcement would find guns or other indications of gun smuggling when searching Mr. Adams' residential and business properties. Thus, the stale evidence was not "freshened" by discovery of the storage unit and the Canadian trips.